■ GTP LEISURE PRODUCTS, INC., Respondent, v B-W FOOTWEAR COMPANY, INC., Appellant.—Order unanimously affirmed, with costs. Memorandum: Plaintiff is a New York corporation and engaged in selling snowmobiles and snowmobile accessories through various dealers in the Syracuse area. It is a distributor for products of Polaris Division of Textron, Inc., whose home offices are in Minnesota. Defendant B-W Footwear Co., Inc., is a Massachusetts corporation and has its principal place of business in that State. It manufactures and sells various types of footwear, including snowmobile boots which it markets with the Polaris label. B-W is not authorized to do business in New York but has five to seven customers located in New York, including Montgomery Ward and J. C. Penney. In February, 1975 B-W's salesman called at plaintiff's place of business to sell 756 pairs of discontinued Polaris boots. After some discussion of price, plaintiff's president agreed to the purchase, signed an order which he prepared on his own order form and attached handwritten financial statements. B-W's salesman annexed to the order an inventory of the boots which had been written on B-W's order form. At the bottom of the inventory sheet, in the proverbial "small print", was printed the advice that all orders were subject to home office acceptance and credit approval. Plaintiff's president denies reading this document and he did not sign it. When the order was returned to B-W's office, the company refused to accept it because the handwritten credit statement was not legible. It forwarded a letter dated March 5, 1975 to plaintiff acknowledging the order by plaintiff's order number and requesting

a new credit statement. In April Polaris discovered that its distributor was purchasing Polaris equipment from B-W rather than through Polaris. B-W's employees were questioned by Polaris people in Minnesota because B-W's intention to sell to plaintiff was a violation of its agreement with Polaris. Polaris' officers were allegedly told that B-W would not sell the boots because plaintiff was a "credit risk". This and other alleged defamatory statements made by B-W's employee about plaintiff were detailed in an in-house memorandum of Polaris contained in the record. The sale of the boots to plaintiff was never completed by B-W. Plaintiff brings this action against B-W seeking compensatory and punitive damages for slander and breach of contract. Defendant's motion to dismiss the complaint and for summary judgment has been denied and plaintiff's cross motion to strike defendant's affirmative defense of lack of jurisdiction has been granted by Special Term. The court has jurisdiction of a nondomiciliary who transacts any business within the State as to any cause of action arising from the transaction of such business (CPLR 302, subd [a], par 1; *Parke-Bernet Galleries v Franklyn,* 26 NY2d 13, 16). Clearly, defendant transacted business in this State which subjects it· to an action here for breach of contract. The only jurisdictional issue is whether the defamation arose out of the New York business transaction, for jurisdiction in an action for defamation may be based upon the transaction of business (see *Legros v Irving,* 38 AD2d 53, app dsmd 30 NY2d 653). Significantly, while the alleged defamation occurred in Minnesota, the subject of the statements was the New York transaction. Plaintiff's credit standing, by B-W's evidence, was a decisive ingredient in the New York transaction. It was also the subject of the slander in Minnesota. When a nondomiciliary engages in a purposeful business transaction in New York and makes a defamatory statement outside of New York about that specific transaction; New York courts may exercise jurisdiction over his person for a cause of action based upon the defamatory statement. Defendant moved to dismiss the complaint because the alleged statements were not slanderous per se and special damages had not been pleaded. However, the statement alleged in paragraph nineteenth of the complaint to the effect that plaintiff was a "credit risk" was slanderous per se *(Isaacs v Pan Amer. Trading Co.,* 7 AD2d 757; and see *Moore v Francis,* 121 NY 199, 203–204). Defendant also contends that the action for breach of contract must be dismissed. The cause of action was not barred by the Statute of Frauds, the written order being sufficient under subdivision (2) of section 2-201 of the Uniform Commercial Code, in confirmation of the alleged oral contract reached after the negotiations on price (see *Loudon Mfg. v American & Elfird Mills,* 46 AD2d 637). Defendant not only did not object to the order as required by subdivision (2) of section 2-201 of the Uniform Commercial Code, but its letter of March 5, 1975 acknowledged the order and took the contract out of Statute of Frauds (see *Spiegel v Lowenstein,* 162 App Div 443, 449; *Wiarda Co. v Independent Chem. Co.,* 162 NYS 158). Whether or not the salesman had authority to bind the defendant is a question of fact (see *Bush v Campbell,* 277 App Div 955). The order was on plaintiff's form, accepted by the salesman and acknowledged by the defendant. The only clause limiting the salesman's authority was on the inventory slip which plaintiff did not sign and which he alleges he did not read. (Appeal from order of Onondaga Supreme Court —strike defense, summary judgment.) Present—Moule, J. P., Cardamone, Simons, Dillon and Goldman, JJ.