**CANTOR FITZGERALD, L.P., Cantor Fitzgerald Securities, Cantor Fitzgerald & Co., and Glenn Grossman, Plaintiffs-Appellants,**

v.

**J. Bart PEASLEE, Yagi Euro Corp., and Yagi Euro (Hong Kong) Limited, Defendants-Appellees.**

No. 610, Docket 95–7518.

United States Court of Appeals, Second Circuit.

Argued Feb. 22, 1996.

Decided July 8, 1996.

Michael A. Lampert, Newark, New Jersey (McManimon & Scotland, Newark, New Jersey, of counsel), for Plaintiffs–Appellants.

Samuel D. Rosen, New York City (Paul, Hastings, Janofsky & Walker, New York City, Joseph D. Penachio, of counsel), for Defendants–Appellees.

Before: NEWMAN, Chief Judge,
LUMBARD and KEARSE, Circuit Judges.

LUMBARD, Circuit Judge:

Cantor Fitzgerald, L.P., Cantor Fitzgerald Securities, Cantor Fitzgerald & Co., and Glenn Grossman appeal from an April 24, 1995 judgment of the District Court for the Southern District of New York (Scheindlin, J.) dismissing their complaint against J. Bart Peaslee, Yagi Euro Corporation and Yagi Euro (Hong Kong) Limited for lack of personal jurisdiction. Plaintiffs brought suit in the New York Supreme Court, New York County, on September 16, 1994. Defendants removed the case to the Southern District and moved to dismiss for lack of personal jurisdiction. Plaintiffs then moved to remand to the state court for lack of federal subject-matter jurisdiction. On March 24, 1995, the court granted the defendants' motions to dismiss, finding that it lacked personal jurisdiction. On appeal, plaintiffs contend that the court should first have considered their motion to remand, and, in any event, the court had jurisdiction over defendant Peaslee. We affirm.

Cantor Fitzgerald, L.P. and its international family of controlled entities are engaged in the business of foreign exchange brokering. In 1993, Glenn Grossman, a partner and managing director of Cantor Fitzgerald, L.P., offered to hire J. Bart Peaslee, then employed by a Japanese brokerage firm in Tokyo, as a manager in Cantor Fitzgerald's Tokyo office. On July 19, 1993, Peaslee and Cantor Fitzgerald signed a non-binding letter of intent acknowledging Peaslee's acceptance of Cantor Fitzgerald's offer of employment as vice president, senior broker, and

manager of Cantor Fitzgerald's yen-based interest rate swap department in Tokyo. Peaslee began working for Cantor Fitzgerald the following day.

Nine months later, on May 3, 1994, Peaslee resigned from Cantor Fitzgerald after receiving a formal employment agreement containing terms significantly less favorable than those envisioned in the letter of intent. Peaslee's entire department of eight or nine employees quit within several hours of his resignation, effectively shutting Cantor Fitzgerald out of the worldwide market in yen-based interest rate swaps for the immediate future. Peaslee and many of his former subordinates subsequently contracted with Euro Brokers Capital Markets Inc., a New York brokerage firm, to work for its Japanese subsidiary, Yagi Euro Corporation, in substantially the same capacity. Grossman advised Peaslee that his resignation, "including presumably [his] role in contributing to the departure of other brokers, [gave] rise to extraordinary liability to [him] personally." He added that Cantor Fitzgerald intended "to bring all necessary resources to bear in connection with these actions."

On September 14, 1994, Peaslee came to New York City en route to Connecticut to attend his sister's wedding. During his two-day stay, Peaslee met with several acquaintances from the financial community and spent one evening with some friends at a bar in the financial district. He also paid a visit to Euro Brokers' New York offices. On September 16, Peaslee and his brother drove to Connecticut. That same day, Cantor Fitzgerald, L.P., together with Grossman and two other Cantor Fitzgerald entities, filed a summons with notice in the New York Supreme Court charging Peaslee, Yagi Euro Corporation, and Yagi Euro (Hong Kong) Limited, a Hong Kong corporation controlled by Euro Brokers, with "libel, slander, defamation[,] injurious falsehood, tortious interference and negligent supervision." On September 18, 1994, Peaslee returned to Tokyo.

The summons with notice was not served on defendants until November 25, 1994. The ensuing complaint, dated December 27, 1994, charged Peaslee with defamation, injurious falsehood, and tortious interference with contract and prospective economic advantage. Cantor Fitzgerald and Grossman alleged that Peaslee "repeatedly [made] false statements to potential employees of Cantor Fitzgerald, and others in the foreign exchange marketplace, that plaintiffs have failed to live up to their contractual obligations with him, are wel[s]hers, untrustworthy, and should not be dealt with." One such statement was allegedly made to a prospective Cantor Fitzgerald employee in Tokyo who declined Cantor Fitzgerald's offer of employment after speaking with Peaslee. Other such comments were allegedly overheard at a bar in New York's financial district during Peaslee's visit in September. The Yagi defendants were charged with negligent supervision.

On December 22, 1994, before receiving the complaint, the defendants removed this action to the Southern District under 28 U.S.C. §§ 1441 and 1446, alleging diversity jurisdiction.[1] Peaslee simultaneously moved to dismiss the action for lack of personal jurisdiction; his attorney submitted an affidavit asserting that Peaslee was not domiciled in New York and had not transacted any business in New York either on his own account or on behalf of the Yagi entities or Euro Brokers. The Yagi defendants filed similar motions on February 3, 1995.

On February 6, 1995, plaintiffs moved to remand to the state court for lack of subject-matter jurisdiction, asserting that diversity was incomplete because Cantor Fitzgerald, L.P. was a limited partnership at least one partner of which was a citizen of the United States domiciled abroad, citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68–69 (2d Cir.1990), *cert. denied*, 505 U.S. 1222, 112 S.Ct. 3036, 120 L.Ed.2d 905 (1992) (holding that a diversity suit cannot be maintained against a partnership one of the partners of which is a United States citizen domiciled

---

**1.** Defendants, none of whom is a citizen of New York, alleged complete diversity based upon their belief that the Cantor Fitzgerald plaintiffs were corporations deemed citizens of New York under 28 U.S.C. § 1332(c). In fact, Cantor Fitzgerald, L.P., Cantor Fitzgerald Securities and Cantor Fitzgerald & Co. are all partnerships, which take the citizenship of each of their respective partners.

abroad). At a status conference on February 10, 1995, each party requested that the court decide its motion first. The court scheduled oral argument on defendants' motions and permitted further discovery.

On March 24, 1995, the court heard oral argument on defendants' personal jurisdiction motions. Plaintiffs conceded that the court had no jurisdiction over defendants Yagi Euro Corporation and Yagi Euro (Hong Kong) Limited. However, they argued that the court had jurisdiction over Peaslee under New York's long-arm statute, N.Y. Civ. Prac. L. & R. § 302. The court disagreed and filed a judgment dismissing the complaint for lack of personal jurisdiction on April 21, 1995.

Plaintiffs argue that the judgment should be vacated and the case remanded to the state court because the District Court should first have granted their motion to remand for lack of subject-matter jurisdiction. Defendants, however, maintain that the District Court had subject-matter jurisdiction because the Cantor Fitzgerald partnerships had no colorable claims and had been improperly joined solely to defeat diversity.

▆▆ In our opinion, the District Court properly exercised its discretion in first deciding the motion to dismiss for lack of personal jurisdiction over the defendants before considering the question of federal subject-matter jurisdiction. Customarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case. On some occasions, however, considerations of judicial economy and restraint may persuade the court to avoid a difficult question of subject-matter jurisdiction when the case may be disposed of on a simpler ground. *Browning–Ferris Indus. of S. Jersey, Inc. v. Muszynski,* 899 F.2d 151, 159–60 (2d Cir.1990); *see Can v. United States,* 14 F.3d 160, 162 n. 1 (2d Cir.1994); *Bi v. Union Carbide Chems. & Plastics Co.,* 984 F.2d 582, 584 n. 2 (2d Cir.), *cert. denied,* 510

U.S. 862, 114 S.Ct. 179, 126 L.Ed.2d 138 (1993).[2] This was the situation before the court in this case. In exercising its discretion as to which question to consider first, a court should be convinced that the challenge to the court's subject-matter jurisdiction is not easily resolved and that the alternative ground is considerably less difficult to decide. *See Browning–Ferris,* 899 F.2d at 159; *see, e.g., Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990). When the alternative ground is one of state law, such as personal jurisdiction, "federalism concerns" may "tip the scales in favor" of first deciding the question of subject-matter jurisdiction, especially if the state law issue is not easily resolved. *Allen v. Ferguson,* 791 F.2d 611, 616 (7th Cir.1986). *But see Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1494 (5th Cir.1993), *cert. denied,* 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994). However, such concerns have little, if any, weight when the question of subject-matter jurisdiction itself raises close issues of state law.

We believe that it is clear that a New York court would not exercise personal jurisdiction over the defendants in this case. It would have been a waste of judicial resources to entertain further proceedings regarding the court's subject-matter jurisdiction. Before passing on the plaintiffs' motion to remand, the court may have had to authorize further discovery and hear argument on the more difficult question whether the Cantor Fitzgerald partnerships have any colorable claims against Peaslee. *See Fahnestock & Co., Inc. v. Castelazo,* 741 F.Supp. 72, 74–75 (S.D.N.Y.1990); *Saxe, Bacon & Bolan, P.C. v. Martindale–Hubbell, Inc.,* 521 F.Supp. 1046, 1047–48 (S.D.N.Y.1981). It would then have had to determine whether diversity jurisdiction could nonetheless be preserved by any of the legal theories suggested by defendants or otherwise. *See Curley v. Brignoli, Curley & Roberts Assocs.,* 915 F.2d 81, 85 (2d Cir.1990), *cert. denied,* 499 U.S. 955, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991) (recogniz-

---

**2.** We note that a judgment rendered by a court assuming subject-matter jurisdiction and sustained on direct appeal is entitled to preclusive effect as long as the District Court did not "plainly usurp jurisdiction" over the action. *Nemaizer*

*v. Baker,* 793 F.2d 58, 65 (2d Cir.1986) (internal quotation marks omitted); *see Chicot County Dist. v. Bank,* 308 U.S. 371, 377, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940).

ing the court's obligation to explore any promising avenue in favor of sustaining subject-matter jurisdiction). In the event diversity jurisdiction were found wanting, the parties would be required to relitigate the issue of personal jurisdiction in the state court.

■ By contrast, it is clear that the court did not have personal jurisdiction over any of the defendants under New York law. Plaintiffs conceded at oral argument that the Yagi defendants are not subject to suit in New York. However, they argued that the court had jurisdiction over Peaslee under New York's long-arm statute because he had defamed them while "transacting business" in New York. *See* N.Y. Civ. Prac. L. & R. § 302.[3] Construing the pleadings and affidavits in the light most favorable to the plaintiffs, *see CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986), the court concluded that there was "a complete failure" on the plaintiffs' part to make a prima facie showing of personal jurisdiction over Peaslee. Even assuming that Peaslee had "transacted business" during his visit to New York in September 1994 within the meaning of § 302(a)(1), the court found that there was no evidence in the record of a substantial relationship between his business activity in New York and his alleged defamatory statements, other than plaintiffs' belated suggestion at oral argument that Peaslee defamed them for Euro Brokers' benefit. *See McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321 (1981) (requiring an "articulable nexus" between the business transacted and the cause of action to establish jurisdiction under section 302(a)(1)).

We believe that Peaslee clearly did not "transact business" in New York in September 1994 within the meaning of § 302(a)(1). Plaintiffs urge that Peaslee's social calls constitute a transaction of business because professionals in the finance industry typically maintain business relationships through informal contacts and social gatherings. They further allege that their cause of action arose from these transactions because Peaslee defamed them "in furtherance of his employment by Euro Brokers in an effort to interfere with Cantor's effectiveness in the marketplace as a competitor." While Peaslee may have had a professional interest in keeping in touch with his colleagues, however, it is not alleged that his social meetings were "essential to the formation or continuance" of any business relationship such that his two-day visit should invoke the jurisdiction of the New York courts. *Pneuma–Flo Sys., Inc. v. Universal Mach. Corp.,* 454 F.Supp. 858, 866 & n. 21 (S.D.N.Y.1978) (collecting cases); *see McKee Elec. Co. v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 37, 229 N.E.2d 604 (1967) (holding that "pass[ing] the time of day" with a customer in New York does not give rise to personal jurisdiction). Furthermore, there was nothing in the record from which to infer that the plaintiffs' cause of action had anything to do with any business that Peaslee transacted while he was in New York. *See GTP Leisure Prods., Inc. v. B–W Footwear Co.,* 55 A.D.2d 1009, 1010, 391 N.Y.S.2d 489, 490 (4th Dep't 1977).

We disagree with plaintiffs' contention that any statements Peaslee may have made regarding his employment with Cantor Fitzgerald, "wherever made throughout the world," arise from the transaction of business in New York because Cantor Fitzgerald is headquartered in New York. Peaslee's employment with Cantor Fitzgerald was negotiated in Japan. The July 19, 1993 letter of intent was executed in Japan. Peaslee only visited New York once while he was employed by Cantor Fitzgerald. Peaslee never engaged in any "purposeful activity in New York directed toward and resulting in the establishment of a contractual relationship."

---

**3.** Section 302(a) provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who ...:
>
> 1. transacts any business within the state ...; or

> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, . . . .

N.Y. Civ. P.L. & R. § 302(a).

*George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 654, 394 N.Y.S.2d 844, 848, 363 N.E.2d 551 (1977). He did not conduct any substantial employment-related activities for Cantor Fitzgerald in New York which would invoke the benefits and protections of the New York courts. *Id.* at 653, 394 N.Y.S.2d at 847, 363 N.E.2d 551. Nor does Peaslee's employment contract with Euro Brokers establish personal jurisdiction over him in New York.

We agree with the court's conclusion that it did not have jurisdiction over Peaslee under § 302(a)(2) and (3), which govern in-state and out-of-state tortfeasors respectively. Both subparagraphs exclude "a cause of action for defamation." Plaintiffs' additional claims of injurious falsehood and tortious interference with prospective economic advantage likewise do not independently establish personal jurisdiction under subparagraphs (2) and (3) because the entire complaint sounds in defamation. *See Findlay v. Duthuit,* 86 A.D.2d 789, 790, 446 N.Y.S.2d 951, 952 (1st Dep't 1982). All of plaintiffs' claims are based upon Peaslee's alleged defamatory statements. *See Jolivet v. Crocker,* 859 F.Supp. 62, 65 (E.D.N.Y. 1994). Plaintiffs may not evade the statutory exception by recasting their cause of action as something other than defamation.[4]

In most cases, and certainly in a case such as this, the District Court must be allowed some discretion regarding the order in which it is to consider any question which will dispose of the litigation in the federal courts. As the record supports the court's dismissal of the complaint for lack of personal jurisdiction over the defendants, we see no reason to question the court's decision as to how best to speed its business. The judgment of the District Court dismissing the complaint is affirmed. Defendants' motion for double costs and attorneys' fees pursuant to Fed. R.App.P. 38 is denied.

---

4. Plaintiffs also argue that Peaslee waived his defense of lack of personal jurisdiction by removing to federal court and commencing discovery on the merits after filing his motion to dismiss. We disagree. Removal does not waive any Rule 12(b) defenses. *See Holzsager v. Valley Hosp.,* 646 F.2d 792, 796 (2d Cir.1981). Furthermore, Peaslee filed his motion to dismiss immediately upon removal and promptly commenced discovery on that motion; he has raised his defense in a timely manner.