Joseph H. SCHAEFFER, III, and Schaeffer Automotive Group, Inc. d/b/a Schaeffer Honda, Plaintiffs,

v.

AMERICAN HONDA MOTOR CO., INC., and American Way Motors, Inc. d/b/a Courtesy Honda and Covington Pike Motors, Inc. d/b/a Covington Pike Honda, Defendants.

No. 95–2131–D/A.

United States District Court, W.D. Tennessee, Western Division.

Aug. 12, 1997.

Robert A. Corrington, Law Office of Robert A. Corrington, Memphis, TN, Daniel E. Myers, Walter E. Forehand, Loula M. Fuller, Myers Forehand & Fuller, Tallahassee, FL, for Joseph H. Schaeffer, III, Schaeffer Automotive Group, Inc.

Randall D. Noel, Thomas W. Lewis, Armstrong Allen Prewitt Gentry Johnston & Holmes, Memphis, TN, Jennifer Ziegenhorn, Hale Headrick & Dewey, Memphis, TN, for American Honda Motor Co., Inc.

Michael F. Rafferty, Harris Shelton Dunlap & Cobb, Memphis, TN, for American Way Motors, Inc., Covington Pike Motors, Inc.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

DONALD, District Judge.

Defendants American Honda Motor Co. and American Way Motors have filed motions under Rule 12(b)(6) and Rule 56 asking the court for judgment as a matter of law concerning two claims against them, one brought under the Sherman Antitrust Act, 15 U.S.C. § 1 (1994), and the other a breach of contract claim. In response, Plaintiffs submitted affidavits and exhibits with respect to their contract claim, but relied only on their pleadings in opposing the antitrust cause of action. Plaintiffs argue they have met their burden under Rule 12(b)(6) by stating a sufficient claim upon which relief can be granted under the Sherman Act and ask the court to deny as premature Plaintiffs' summary judgment motion as to their antitrust claim. This last argument is based on Plaintiffs' contention that they have had an insufficient opportunity to conduct discovery in this matter. However, in alleging their Sherman Act claim, Plaintiffs have failed to meet their burden under Rule 12(b)(6), and there is no need to extend discovery. Accordingly, Defendants' motions are granted with respect to the antitrust cause of action. The court also finds Plaintiffs' breach of oral promise claim is barred by the parol evidence rule and grants Defendant American Honda's motion for summary judgment.

## I. BACKGROUND

In 1992, Joseph ("Joey") Schaeffer, acting on behalf of Schaeffer Automotive, negotiated to purchase an existing Honda automobile dealership franchise located on Elvis Presley Boulevard in Memphis, Tennessee. Mr. Schaeffer signed a purchase and sale agreement with the dealership's owner on February 24, 1992 (the previous owner, H.I. Co., Inc., d/b/a Glenn Dodd Honda/Isuzu is not a party to this action). The agreement specified that American Honda Motor Co., which was not a party to the contract, would have to give its written approval for the purchase. The agreement also contained the following provision: "This authorization, transfer and approval of American Honda Motors Company, Inc. . . . shall also include written approval for Buyer to move the physical location of the Business to a new location selected by Buyer." (Aff. of Earl L. Campbell Ex. A ¶ 6.)

A Honda official wrote Mr. Schaeffer that this provision was unacceptable and that Honda would not approve the sale of the dealership if the sales contract contained the express condition that Honda would approve a relocation. The March 19, 1992, letter from Robert Mazzitelli, Honda's regional sales manager, also stated that "[w]e both agree that the dealership should be relocated," but that the location of a future site would depend on the findings of a market study that American Honda would conduct. (Id. Ex. C.) In a "Notice to Applicant" several weeks later, American Honda warned that

"[n]o prior oral agreements of any kind are binding on American Honda and no field representative has the authority to bind American Honda to a sales agreement." (*Id.* Ex. B.)

On May 22, 1992, Mr. Schaeffer and the selling dealer modified their agreement to specify that the sale was conditioned, among other provisions, on Honda approving Mr. Schaeffer's application to become an authorized dealer "at a physical location mutually acceptable" to American Honda and Schaeffer Automotive Group. (*Id.* Ex. D.) Plaintiffs claim they modified the sales agreement in reliance on Mr. Mazzitelli's "promise" that "the dealership would be allowed to relocate." (Am. Compl. ¶¶ 16, 17.)

At some point, Mr. Mazzitelli informed Mr. Schaeffer that American Honda would not approve Mr. Schaeffer's relocation preference. Whether this occurred before or after the modification had been executed is unclear. Mr. Mazzitelli wrote Mr. Schaeffer seven days after the contract was modified, but he used the past tense in stating that, "I informed you that a relocation to the Germantown–Collierville area would not be approved by American Honda." (Campbell Aff. Ex. C at 2.) Mr. Schaeffer contends that the letter was the first he knew that Honda corporation had rejected a Germantown–Collierville site for his dealership (Aff. of Joey H. Schaeffer ¶ 15.) He also states that, in a follow-up conversation, Mr. Mazzitelli assured him that Honda had not eliminated Germantown–Collierville as a possible location, only that the company could not approve it at that time. (*Id.* ¶ 17.) According to the complaint, Honda has refused to assist Plaintiffs to determine a suitable site for relocating the dealership. Honda allegedly did not initiate the promised market study and turned down an alternative site that Mr. Schaeffer proposed in February 1994. (Am. Compl. ¶ 18.)

Count One of the Amended Complaint states that in 1986 two other Memphis-based Honda dealerships owned by American Way Motors, Inc.—Courtesy Honda and Covington Pike Honda—unlawfully agreed with officials from American Honda that it would not approve any relocation of a third dealership to a site east of either the Courtesy or Covington Pike operations. This agreement allegedly occurred at a time when the dealership eventually purchased by Mr. Schaeffer had been proposed but not located at its present site on Elvis Presley Boulevard. (*Id.* ¶¶ 21–22.)

Count Two of the complaint alleges that Honda breached a collateral agreement to assist in determining a new site for Mr. Schaeffer's Honda dealership. Plaintiffs argue that Mr. Mazzitelli, as Honda's agent, had the actual or apparent authority to bind the corporation to a promise to aid in relocating the dealership. Plaintiffs also argue that Honda is estopped from denying Mr. Mazzitelli's agency and that the claimed oral agreement is enforceable under a promissory estoppel theory.

## II. SHERMAN ACT

Section 1 of the Sherman Act bars "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations...." 15 U.S.C. § 1. Failure to allege either a conspiracy or restraint of trade is fatal to a litigant who sues under § 1 and justifies dismissal under Rule 12(b)(6).[1] *Crane & Shovel Sales Corp. v. Bucyrus–Erie Co.*, 854 F.2d 802, 805 (6th Cir.1988). These essential elements "must be alleged in more than vague and conclusory terms" to prevent dismissal. *Id.*

Plaintiffs argue they have met their burden under Rule 12(b)(6) by alleging a horizontal restraint of trade. (Pls.' Mem. Opp'n Mot. to Dismiss and for Summ. J. at 9–10.) A horizontal restraint is one between or among competitors at the same level of market structure, whereas a so-called "vertical" restraint involves combinations of per-

---

1. The court finds it unnecessary to rule on Defendant American Way Motor's argument that the Sherman Act's four-year statute of limitations bars Plaintiffs' claim. *See Cantor Fitzgerald, L.P. v. Peaslee,* 88 F.3d 152, 155 (2d Cir.1996) (con-siderations of judicial economy permit a court to avoid a subject-matter jurisdiction determination when the case may be disposed of on a simpler ground).

sons or entities at different levels of the market structure, such as manufacturers and distributors. *United States v. Topco Assoc., Inc.,* 405 U.S. 596, 608, 92 S.Ct. 1126, 1133–34, 31 L.Ed.2d 515 (1972). Horizontal restraints have been characterized as "naked restraints of trade with no purpose except stifling of competition" and are *per se* illegal under § 1. *White Motor Co. v. United States,* 372 U.S. 253, 263, 83 S.Ct. 696, 702, 9 L.Ed.2d 738 (1963).

▇▇▇ It is clear to the court that Plaintiffs have alleged a vertical restraint. To begin with, the conspiracy allegedly took place between two dealerships (owned by the same corporate entity) and the American Honda Motor Co., the manufacturer of the automobiles. Such an agreement would be a textbook illustration of an agreement among entities at different levels of competition, "such as agreements between a manufacturer and its distributors to exclude another distributor from a given product and geographic market." *Crane,* 854 F.2d at 805. The fact that two entities at the same level are part of an agreement to restrain trade does not transform the relationship into a horizontal restraint, even if it has horizontal effects. *Business Elec. Corp. v. Sharp Elec. Corp.,* 485 U.S. 717, 730–31 n. 4, 108 S.Ct. 1515, 1523 n. 4, 99 L.Ed.2d 808 (1988). Such an agreement would be considered horizontal only if a cartel agreement among lower-level conspirators *coerced* the coconspirator at the higher market structure level, or if the entity at the higher level were merely the enterprise through which conspirators had effected their horizontal restraint. *Id.; Topco,* 405 U.S. at 609, 92 S.Ct. at 1134

In considering motions to dismiss vertical restraint cases, the Supreme Court has focused on whether the agreement results in the stifling of *inter* brand competition, defined as competition among manufacturers of the same "generic product." *Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 52 n. 19, 97 S.Ct. 2549, 2558 n. 19, 53 L.Ed.2d 568 (1977). Such competition "is the primary concern of antitrust law," in contrast to competition among the distributors—whether at the wholesale or retail levels—of a particular manufacturer's product. *Id.* To survive a

Rule 12(b)(6) motion, a complaint alleging a violation of § 1 must allege an anticompetitive effect at the interbrand level, and the allegation must be in more than "vague and conclusory terms." *Crane,* 854 F.2d at 805–06; *see also Dunn & Mavis, Inc. v. Nu–Car Driveaway, Inc.,* 691 F.2d 241, 243–44 (6th Cir.1982) (a complaint that merely states commercial disappointment at losing a distribution contract fails to allege restraint of trade).

Plaintiffs' amended complaint states that, as a result of the alleged collusion between American Honda, Courtesy Honda and Covington Pike Honda, "there has been a substantial lessening of competition and a substantial impact on interstate commerce...." (Am. Compl. ¶ 30.) Although in considering a motion to dismiss the court is obliged to "treat all of the well-pleaded allegations of the complaint as true," *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492, 53 L.Ed.2d 557 (1977), Plaintiffs' bare allegations here do not meet the standard under Rule 12(b)(6). There is no allegation, for example, that the automobiles of other manufacturers are now less available in the Memphis area than before the alleged conspiracy. *See Ace Beer Distributors, Inc. v. Kohn, Inc.,* 318 F.2d 283, 287 (6th Cir.), *cert. denied,* 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963).

▇▇▇ This is an easy call. Even a vertical nonprice restraint that results in the *elimination* of an outlet for a particular manufacturer's product is not an unreasonable restraint of trade. *Fray Chevrolet Sales, Inc. v. General Motors Corp.,* 536 F.2d 683, 686 (6th Cir.1976); *see also Crane,* 854 F.2d at 807 (a complaint charging restraint of trade based on a manufacturer's substitution of one distributorship for another must allege anticompetitive effect at the interbrand level to survive a Rule 12(b)(6) motion). As noted by one district court, "opinions have been unanimous ... in holding that a manufacturer's changes in his distribution system, vertical realignments, eliminations, or transfers, do not offend anti-trust acts." *B & B Oil & Chem. Co. v. Franklin Oil Corp.,* 293 F.Supp. 1313, 1317 (E.D.Mich.1968). The alleged agreement may have decreased intrabrand

competition, but in the absence of a "pernicious effect" on interbrand competition, no § 1 claim may lie. *See St. Martin v. KFC Corp.*, 935 F.Supp. 898, 905 (W.D.Ky.1996). Defendants motion to dismiss Plaintiffs' Sherman Act claim is granted.

## III. BREACH OF PROMISE

### A. Parol Evidence Rule

■ Honda claims that the parol evidence rule bars Plaintiffs' claim that Honda breached a promise to approve a new site for Mr. Schaeffer's dealership. Defendant argues that Mr. Mazzitelli's alleged promise is inadmissible because the "Dealer Sales and Service Agreement" between Honda and Schaeffer Automotive Group on June 10, 1992, is a fully integrated contract. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727, at 156 (2d ed.1983) (inadmissible material will not be considered on a summary judgment motion). The sales and service agreement provides in part:

> The Agreement contains the entire agreement between Dealer and American Honda. Dealer acknowledges that no representations or statements other than those expressly set forth therein were made by American Honda or any officer, employee, agent or representative thereof, or were relied upon by Dealer in entering into the Agreement. The Agreement terminates and supersedes, as of the execution thereof, all prior agreements relating to Honda Products, if any.

(Campbell Aff. Ex. E ¶ 11.2.) The contract also states that American Honda approved the Elvis Presley Boulevard address, and no other, as a location for Plaintiffs' dealership. (*Id.* ¶ E.) Mr. Schaeffer is thus barred from asserting an oral promise for Honda's assistance in relocating his dealership, according to Defendant. (Def. Honda's Mem. Supp. Summ. J. at 15.)

The parol evidence rule provides that "parol evidence is inadmissible to contradict, vary, or alter a written contract where the written instrument is valid, complete, and unambiguous, absent fraud or mistake or any claim or allegation thereof." *Airline Constr.,*

*Inc. v. Barr,* 807 S.W.2d 247, 259 (Tenn.Ct. App.1990). The rule has been applied to exclude evidence of negotiations, correspondence, representations or statements, particularly those made prior to the writing itself. *Eman v. Keuffel & Esser of N.J., Inc.,* 1988 WL 60493, at *3 (Tenn.Ct.App. June 15, 1988).

The parol evidence rule is particularly applicable if the contract at issue contains an integration or a merger clause. *Waring v. Polymer Materials, Inc.,* 1997 WL 32736, at *2 (Tenn.Ct.App. Jan.29, 1997) (citing 29A Am.Jur.2d *Evidence* § 1095 (1994)). This tracks the Restatement view. *See GRW Enter., Inc. v. Davis,* 797 S.W.2d 606, 610 n. 2 (Tenn.Ct.App.1990), *see also Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1294–95 (6th Cir.1991).

■ An integrated agreement is a writing constituting a final expression of one or more terms of an agreement; a *completely* integrated agreement has been "adopted by the parties as a complete and exclusive statement of the terms of the agreement." *Restatement (Second) of Contracts* §§ 209–210 (1981). Under the Restatement, a binding completely integrated agreement discharges prior agreements to the extent that they are within its scope. *Id.* § 213(2). Thus, prior written or oral agreements are rendered inoperative if the writing is a complete integration. *Id.* cmt. a. Plaintiffs argue that, because the sale and service agreement between the parties does not state that the Schaeffer dealership must remain on Elvis Presley Boulevard or that it cannot be moved, evidence of Mr. Mazzitelli's alleged oral promise would not contradict or vary any express term of the sale and service agreement. However, in the case of a completely integrated agreement, even consistent additional terms are superseded. *Restatement (Second) of Contracts* § 213 cmt. c & § 216. Thus, courts will not look beyond the written contract to alter, vary or qualify the plain meaning of an unambiguous written contract. *GRW Enter.,* 797 S.W.2d at 610 (citing *Jones v. Brooks,* 696 S.W.2d 885, 886 (Tenn.1985)).

■ Plaintiffs argue that evidence of oral statements made prior to or contemporane-

ous with the writing in question may be introduced to prove the existence of an independent collateral agreement, so long as that side agreement does not contradict the written agreement. (*See* Pls.' Mem. Opp'n Mot. to Dismiss and Summ. J. at 18.) Oral statements or negotiations *are* admissible to establish that the writing is not an integrated agreement, or that it is not a complete integration, *Restatement* § 214(a)–(b), but once a court determines a writing is a complete integration, that document is steeled against parol intruders that would vary, contradict or add to its terms. "The law is well settled that all evidence of verbal negotiations and stipulations anterior to or contemporaneous with the execution of a written instrument which contradict, alter or vary the terms of the written instrument is barred by the parol evidence rule...." *Marron v. Scarbrough,* 44 Tenn.App. 414, 314 S.W.2d 165, 181 (1958). Even if parol evidence does not contradict the terms of a completely integrated agreement, it is still inadmissible if it comes within the "scope" of the writing. *Restatement* § 213(2); *Strickland v. City of Lawrenceburg,* 611 S.W.2d 832, 838 (Tenn.Ct.App. 1980); *see also In re Tom Woods Used Cars, Inc.,* 23 B.R. 563, 567 (Bankr.E.D.Tenn.1982) ("Consistent additional terms can be proved *unless* the court finds the contract was intended as the 'complete and exclusive' expression of the parties' agreement.") (emphasis added).[2]

The asserted prior agreement is clearly within the scope of the integrated contract at issue. The parties agreed on a list that contained a single approved location for Plaintiffs' dealership—Elvis Presley Boulevard—and Mr. Schaeffer specifically agreed that he did not rely on any representations or statements by Honda personnel or agents in entering into the sales and service agree-

ment. (Campbell Aff. Ex. E ¶¶ E & 11.2.) This latter provision is in addition to a merger clause contained in the agreement. (*See id.*) Plaintiffs' description of the oral relocation agreement as "collateral" is unavailing. The test is " 'whether the oral agreement is one which, considering the circumstances of the parties, the subject-matter, and the nature of the writing, would ordinarily have been embodied in the written instrument, had the parties intended that they should be bound thereby.' " *Early v. Street,* 192 Tenn. 463, 241 S.W.2d 531, 535 (1951). Given the unambiguous language of the sales and service agreement and the specific mention of the Elvis Presley Boulevard location, the alleged relocation agreement cannot be characterized as collateral. Accordingly, evidence of such an oral agreement is incompetent under the parol evidence rule.

**B. Estoppel**

■ As the alleged promise to assist in relocating Plaintiffs' dealership is not a collateral agreement and therefore is barred by the parol evidence rule, it is unnecessary to address Plaintiffs' argument that Mr. Mazzitelli's promise is enforceable under a promissory estoppel theory. The doctrine of estoppel cannot be used as an end sweep around the parol evidence rule. *Hartford Fire Ins. Co. v. Nance,* 12 F.2d 575, 576–77 (6th Cir. 1926); *Patton v. Bearden,* 1992 WL 547701, at *1 (W.D.Tenn. Sept.10, 1992), *aff'd,* 8 F.3d 343 (6th Cir.1993). The purpose of a clause stating that no other agreements save the writing itself will bind the parties is to prevent the parties from relying on statements or representations made during negotiations that were not included in the final agreement. To permit Plaintiffs to use an estoppel theory in order to add terms to a completely integrated contract would strip the

---

**2.** Another exception to the parol evidence rule is if the contract was obtained through fraudulent actions or words. Thus, agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible to show illegality or fraud. *See McMillin v. Great Southern Corp.,* 63 Tenn.App. 732, 480 S.W.2d 152, 155 (1972). Although Plaintiffs do allege that they relied on Mr. Mazzitelli's promise in modifying their purchase agreement with the previous owners of the Honda dealership, (Am. Compl.

¶ 17), they do not allege fraud in the inducement of the sales and service agreement with American Honda Motor Company. Although the parol evidence rule would permit evidence concerning the representations of a party made prior to the signing of a contract in a fraudulent inducement claim, the rule bars such evidence when the cause of action is merely breach of contract. *Lowe v. Gulf Coast Dev., Inc.,* 1991 WL 220576, at *5 (Tenn.Ct.App. Nov. 1, 1991).

integration clause of all utility. *Cf. Coal Resources, Inc. v. Gulf & Western Indus., Inc.,* 756 F.2d 443, 447 (6th Cir.1985), *rev'd on other grounds,* 865 F.2d 761 (6th Cir.1989) (promissory fraud theory may not be used to impose additional obligations upon a party to a written contract containing an integration clause); *Gatliff Coal Co. v. Cox,* 152 F.2d 52, 56 (6th Cir.1945) (agreeing with the argument that, absent an allegation of fraud or mutual mistake, the parol evidence rule would bar estoppel defense).

## IV. ORDER

For the foregoing reasons, Defendants' motions to dismiss and for summary judgment are **GRANTED.**