The BANK of NEW YORK COMPANY, INC., Plaintiff–Appellant,

v.

NORTHEAST BANCORP, INC.; First Fidelity Bancorporation; Frank J. Kugler, Jr.; George R. Kabureck and Peter V. Young, Defendants–Appellees.

No. 1841, Docket 93–7411.

United States Court of Appeals, Second Circuit.

Argued June 10, 1993.

Decided Nov. 22, 1993.

---

**1066**

Philip K. Howard, New York City (Linda C. Goldstein, Howard, Darby & Levin, of counsel), for plaintiff-appellant.

William H. Narwold, Hartford, CT (Laura W. Ray, Cummings & Lockwood, of counsel), for defendants-appellees Northeast Bancorp, Inc., Frank J. Kugler, Jr., George R. Kabureck and Peter V. Young.

Jonathan I. Blackman, New York City (Mitchell A. Lowenthal, Jonathan A. Willens, Martin Marvet, Chaya F. Weinberg–Brodt, Cleary, Gottlieb, Steen & Hamilton, Harold B. Finn, III, Donna Nelson Heller, Jennifer B. Rubin, Finn Dixon & Herling, of counsel), for defendant-appellee First Fidelity Bancorporation.

Before: OAKES, WINTER and McLAUGHLIN, Circuit Judges.

WINTER, Circuit Judge:

The Bank of New York Co. ("BNY") appeals from the denial by Judge Covello of its motion for a preliminary injunction. BNY, which, at the beginning of pertinent events, owned all the 1,000,000 issued shares of Northeast Bancorp's ("Northeast") non-voting common stock (Class B), sought to enjoin the merger of Northeast and First Fidelity Bancorporation ("First Fidelity"). Because the merger has already occurred and we cannot feasibly restore the *status quo*, we dismiss the appeal as moot.

In January 1992, Northeast, on the verge of bankruptcy and under pressure from federal and state regulators, entered into a Memorandum of Understanding with the FDIC and state banking regulators, whereby Northeast agreed to take affirmative actions to improve their operations. Then, in an effort to increase Northeast's financial stability, First Fidelity proposed to merge with Northeast and infuse it with cash. The terms of the proposed merger were disclosed in Northeast's March 1993 proxy statement. The proxy statement proposed both a primary and an alternative merger. Under either, Northeast would become a wholly-owned subsidiary of First Fidelity.

The primary merger contemplated the merger of a First Fidelity subsidiary into Northeast and the exchange of voting (Class A) and non-voting Northeast common stock for First Fidelity stock. It required two-thirds approval of both Class A shareholders and Class B shareholders. *See* Conn.Gen. Stat. § 33–366(b) (1987). Because, however, Northeast anticipated opposition from BNY, the sole Class B shareholder, it also proposed a two-stage alternative merger, which was ultimately consummated. Under the first stage of the alternative plan, Northeast's voting common stock was exchanged for First Fidelity stock, giving First Fidelity control over Northeast. Because this first stage did not affect the terms, limitations, or rights of Class B shares, Class B approval was not required. *See* Conn.Gen.Stat. §§ 33–361(a), 33–366(b)(3) (1987). This first-stage exchange was approved by 70% of the Class A shareholders at an April 22, 1993 shareholders' meeting.

On April 26, 1993, BNY sought a preliminary injunction to enjoin the consummation of the second stage. Judge Covello denied the motion on May 3. Completing the second stage, Northeast issued an additional 2,001,000 Class B shares, as authorized by a 1985 amendment to its Articles of Incorporation. First Fidelity then infused Northeast with $130 million in exchange for the newly-issued Class B shares. On May 17, 1993, First Fidelity, which now controlled the Class B vote, voted its new shares in favor of the merger of a newly-formed First Fidelity subsidiary into Northeast, in which the Class B shares held by BNY were exchanged for First Fidelity stock. This exchange completed the two-stage merger, and Northeast was thereafter run as a wholly-owned subsidiary of First Fidelity.

BNY appeals from Judge Covello's denial of its motion for a preliminary injunction against the completion of the two-stage

merger. Recognizing that Northeast and First Fidelity have already consummated the merger, BNY seeks to transform its motion for a preliminary injunction into an "application ... for rescission." In general, an appeal from the denial of a preliminary injunction is mooted by the occurrence of the action sought to be enjoined. *Richland v. Crandall*, 353 F.2d 183 (2d Cir.1965) (sale of assets after denial of stockholders' preliminary injunction blocking sale moots appeal); *Scattergood v. Perelman*, 945 F.2d 618, 621 (3d Cir.1991) (appeal from preliminary injunction to enjoin merger moot where merger consummated pending appeal). BNY argues, however, that where all of the parties are before an appellate court and the court can restore the *status quo* even after the event sought to be enjoined has occurred, the appeal is not moot.

We express no opinion as to whether there should be an exception to the general rule of mootness in cases where an appellate court can feasibly restore the *status quo*, because this is not such a case. Whether or not all the parties are before the court, where a merger has been consummated, restoration of the *status quo* may be impossible. *See, e.g., FTC v. Exxon Corp.*, 636 F.2d 1336, 1342–43 (D.C.Cir.1980) ("Mergers and acquisitions are often followed by a commingling of assets and other substantial changes in the structures of the enterprise involved. Once those changes occur, it is often impossible ... to compel a return to the *status quo*, and the legality of the challenged merger or acquisition may become essentially a moot question.").

In seeking rescission, BNY apparently anticipates that First Fidelity would be ordered to return the newly-issued Class B shares to Northeast and the Class B shares tendered by BNY to it. However, months have passed since the consummation of the merger, values have changed, and a stock transfer will not restore the three companies to their premerger circumstances. A full restoration of the *status quo* would have to take into account the fact that First Fidelity paid $130 million for the newly-issued Class B shares. On the one hand, even if a return of this amount by Northeast is a realistic possibility, the parties would not be restored to their original positions. In such a case, First Fi-

delity's infusion of capital would have restored Northeast to a profitable condition, but First Fidelity would not share as a Class B holder, as it would receive only its capital plus interest. On the other hand, if a return of $130 million is not possible, it would defy common sense to order it.

A preliminary injunction preserves the *status quo* pending final resolution of litigation. In contrast, rescission in circumstances such as the present is a remedy in which a court attempts to re-sort the assets of the parties in the most equitable manner. In the instant case, rescission would not restore the *status quo* and is thus not an appropriate preliminary remedy. The relief sought via the preliminary injunction cannot be obtained by ordering rescission, and the appeal is therefore moot.

Dismissed.