**FIDELITY PARTNERS, INC.,**
**Plaintiff–Appellant,**

v.

**FIRST TRUST COMPANY OF NEW YORK; Morgan Guaranty Trust Company of New York; Euroclear System; ING Bank of Manila; Philippine Export and Foreign Loan Guarantee Corporation, Defendants–Appellees.**

Nos. 97–9589, 97–9639.

United States Court of Appeals, Second Circuit.

Argued March 2, 1998.

Decided April 27, 1998.

Robert L. Weigel, New York City (Sue J. Nam, Gibson, Dunn & Crutcher, New York City, on brief), for Fidelity Partners, Inc.

David C. Singer, New York City (Patrick J. McLaughlin, Moon S. Kim, Dorsey & Whitney, New York City, on brief), for First Trust Company of New York.

James L. Kerr, New York City (Lowell G. Harriss, Dennis E. Glazer, Randall D. Guynn, Davis Polk & Wardwell, New York City, on brief), for Morgan Guaranty Trust Company of New York.

Before: NEWMAN, CABRANES and MERRITT,* Circuit Judges.

JON O. NEWMAN, Circuit Judge:

These consolidated appeals concern garnishment in the context of a form of ownership of financial interests that is becoming widely used in today's global economy. The subject of the litigation is an interest in bonds regulated through a "multi-tiered" or "indirect" holding system. The system with which this litigation is concerned is Euroclear, a network of 2,400 participating financial institutions that engage in cross-border securities transactions. Key features of an indirect holding system are that interests in bonds are reflected on the books of various institutions, transfers are effected by electronic book-entry, and the need to transfer the instruments in which participating interests are held rarely arises.

The principal issue sought to be presented by this appeal is whether, under New York law, a judgment creditor can execute against an interest in bonds beneficially owned by a judgment debtor, where, pursuant to an indirect holding system like Euroclear, the bonds are payable in New York by the issuer's New York paying agent, but the judgment debtor's interest is recorded only on the books of a financial intermediary located abroad. Fidelity Partners, Inc. ("Fidelity") appeals

---

* The Honorable Gilbert S. Merritt of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

from the December 10, 1997, judgment of the District Court for the Southern District of New York (Sidney H. Stein, Judge), dismissing Fidelity's petition seeking to attach an interest in bonds owned by the Philippine Export and Foreign Loan Guarantee Corporation ("Philguarantee") (Docket No. 97–9589). A related appeal by Fidelity seeks review of the District Court's order dated December 24, 1997, formally vacating a restraining order that had prohibited Philguarantee from selling its interest in the bonds. Fidelity argues that the District Court erred in concluding that New York law precludes garnishment proceedings against First Trust Company of New York ("First Trust") (Docket No. 97–9639). Before we may consider that issue, however, we encounter a circumstance that might render the litigation moot, and we are obliged to remand for a determination of the relevant facts bearing on mootness.

### Background

*The California lawsuit.* Philguarantee is an instrumentality of the government of the Republic of the Philippines that was created in 1974 for the purpose of guaranteeing loans to foster economic growth within that country. In 1985, Philguarantee commenced an action in state court in California against Vincente Chuidian, a businessman with ties to Ferdinand Marcos (then the President of the Philippines), alleging that Chuidian had misused loan guarantees. That action was settled, with Chuidian agreeing to transfer shares of stock in three different corporations to Philguarantee in exchange for, among other things, several million dollars in cash. Pursuant to the settlement agreement, the parties signed a stipulated judgment.

In April 1986, Philguarantee moved to vacate the judgment to the extent that it required cash payments to Chuidian, on the ground that the settlement had been pro-

cured by fraud. A California trial court denied the motion, and the California Court of Appeal affirmed. *See Philippine Export and Foreign Loan Guarantee Corp. v. Chuidian,* 218 Cal.App.3d 1058, 267 Cal.Rptr. 457 (1990).[1] However, the Court of Appeal ruled that because of limitations imposed by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1610, Chuidian could execute on the judgment in this country by attaching only "debts owing or to become owing to Philguarantee from individuals or entities located in the United States." *Philippine Export,* 267 Cal.Rptr. at 481.

In April 1991, Chuidian filed for bankruptcy protection, and the bankruptcy trustee assigned the California judgment to Fidelity for $100 plus a 40 percent interest in whatever Fidelity might be able to recover from Philguarantee. In December 1995, Fidelity filed an action against Philguarantee in the Philippines seeking to recover the sum owed to Chuidian; that action is still pending.

*The first New York lawsuit and the restraining order.* In January 1996, Fidelity filed an action against Philguarantee in the New York State Supreme Court for New York County, seeking to execute on the California judgment against any assets Philguarantee might have in New York. Fidelity also moved for, and the state court issued, a temporary restraining order "enjoining Philguarantee from making or suffering any sale, assignment, transfer or interference with any property in which it has an interest." Philguarantee removed, and the case was assigned to Judge Schwartz, No. 96 Civ. 407 (S.D.N.Y.). Judge Schwartz extended the restraining order that had been granted by the state court until such time as the parties could be heard as to whether the order should remain in effect.

After an unsuccessful effort to attach certain bank accounts of Philguarantee,[2] Fi-

---

1. The settlement also was upheld in a later proceeding filed by Chuidian in federal court in California. *See Chuidian v. Philippine National Bank,* 734 F.Supp. 415 (C.D.Cal.1990), *aff'd,* 976 F.2d 561 (9th Cir.1992).

2. In February 1996, Fidelity moved for an order of attachment and execution against bank accounts purportedly held by Philguarantee at the

Philippine National Bank ("PNB") and the Federal Reserve Bank. Judge Schwartz denied the motion, finding that the requested attachment (i) would be in violation of the FSIA, since the accounts were not located in the United States, and (ii) would be improper under New York law, since any attempt to reach funds in a PNB account in Manila through PNB's New York

delity learned that Philguarantee owned an interest in certain Philippine Interest Reduction Bonds ("FLIRBs") that had been issued by the Republic of the Philippines in an offshore offering in 1992.[3] The FLIRBs are dollar-denominated bonds purchased and traded through "Euroclear," which is a multi-tiered indirect holding and clearance system managed by Morgan Guaranty Trust Company ("Morgan"). At least at that time, Philguarantee held a $1.75 million participation interest in the FLIRBs through ING Bank of Manila ("ING Bank"). The only entity on whose books the interest of Philguarantee was then reflected was ING Bank. ING Bank, in turn, held its interest in the FLIRBs through Euroclear, where its interest is reflected in a book-entry credit to a securities account maintained by Morgan's Brussels branch office. Finally, Morgan's London office, as sub-custodian for Morgan Brussels, is· the holder of Global Bearer Certificates representing the FLIRBs, and is the only recorded owner of the FLIRBs reflected on the books of First Trust, the New York-based fiscal and paying agent, registrar, transfer agent, and authenticating agent pursuant to the terms of three fiscal agency agreements entered into by the issuer.

In May 1997, Fidelity moved for an order of execution against what it described as "the debt owed to Philguarantee by the Republic of the Philippines, the issuer and obligor of the Philippine Interest Reduction Bonds owned by Philguarantee." Because Judge Schwartz was unavailable, a hearing on the motion was held before Judge Brieant on May 6. Three weeks later, Judge Brieant signed a restraining order barring Philguarantee from disposing of its interest in the FLIRBs, but refrained from issuing a defini-

tive ruling with respect to the propriety of the requested attachment.

*The second New York lawsuit.* On July 16, Fidelity commenced a separate action in the District Court, No. 97 Civ. 5184 (S.D.N.Y.), styled as a "turnover" proceeding, seeking an order directing First Trust to cause the issuance and delivery to Fidelity of a "definitive bearer bond" (*i.e.,* a newly issued bond to be carved out of the Eurobond) in an amount equal to Philguarantee's interest in the FLIRBs. The complaint also named as respondents Morgan, Euroclear, ING Bank, and Philguarantee, but sought no specific relief against any of these parties.

*Subsequent developments.* Because the subsequent developments bear significantly on the mootness issue, we set them forth in detail. On July 31, First Trust filed a motion in 96 Civ. 407 seeking modification of Judge Brieant's restraining order. At a hearing on August 15, Judge Stein ruled that, pending his decision in the turnover proceeding, the restraining order issued by Judge Brieant would remain in effect, with a modification to permit payment of the interest due September 1 on a separate series of FLIRBs in which Philguarantee held no interest. Neither Philguarantee nor ING Bank appeared at the August 15 hearing, at any subsequent hearing in the District Court, or on appeal. On August 18, Judge Stein confirmed his August 15 oral ruling by a written endorsement on First Trust's July 31 motion. On September 3, First Trust, joined by Morgan, filed a motion for reconsideration of the Court's August 18 written ruling, modifying the restraining order.[4]

In an opinion and order dated December 1, 1997, Judge Stein dismissed Fidelity's petition in 97 Civ. 5184. *See Fidelity Partners, Inc. v. First Trust Co.,* No. 97 Civ. 5184, 1997

---

branch would violate the so-called "separate entities" rule. *See Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee Corp.,* 921 F.Supp. 1113, 1117–20 (S.D.N.Y.1996). Judge Schwartz also determined that Philguarantee did not have any assets on deposit with the Federal Reserve. *See id.* at 1120.

3. The offering of these securities was exempted from federal registration requirements pursuant to Regulation S, promulgated under the Securities Act of 1933. To qualify for the exemption,

issuers must avoid "directed selling efforts" in the United States or to identifiable groups of American citizens residing abroad. *See* 17 C.F.R. §§ 230.901–230.904.

4. The District Court's docket sheet in 96 Civ. 407 reports this motion to have been filed by Philguarantee, but inspection of the .motion paper indicates that it was in fact filed by First Trust and Morgan.

WL 752725 (S.D.N.Y. Dec. 5, 1997). Judge Stein determined that the FSIA prohibited execution against Philguarantee's interest in the FLIRBs, because that interest was located in the Philippines, where ING Bank was located. *See id.* at *1. He further ruled that this problem could not be rectified by an order directing First Trust to deliver a "carved out" bearer bond to Fidelity, because ING Bank was the only proper garnishee under the applicable state law. *See id.*

On December 4, Judge Stein denied the motion that First Trust and Morgan had filed on September 3 in 96 Civ. 407, seeking reconsideration of Judge Stein's order of August 18, modifying Judge Brieant's restraining order. In a margin endorsement filed December 5, which is especially relevant to the pending appeals, Judge Stein wrote "Motions denied as moot, in light of the Opinion and Order dated 12/1/97. So ordered," referring to the opinion in 97 Civ. 5184 that dismissed the turnover petition. On December 10, judgment was entered dismissing the petition in 97 Civ. 5184, and Fidelity filed a notice of appeal (2d Cir. Docket No. 97–9589) five days later.

On December 12, First Trust, apparently not certain that Judge Stein's December 5 denial of its September 3 motion on grounds of mootness reflected his view that Judge Brieant's restraining order had been effectively terminated by the December 1 opinion dismissing Fidelity's turnover petition, wrote Judge Stein a letter enclosing a proposed order to be entered in 96 Civ. 407, formally vacating the restraining order. Also on December 12, Fidelity, alleging that it had just become aware of the Court's December 5 ruling denying as moot First Trust's September 3 motion, wrote its own letter to Judge Stein. Fidelity's letter noted that the Court's December 1 decision in 97 Civ. 5184 had not "directly" addressed the restraining order in 96 Civ. 407, and expressed the view that the restraining order had not been vacated and should remain in place. On De-

cember 19, Fidelity filed a motion for a stay of any dissolution of the restraining order and a memorandum opposing First Trust's request to vacate the restraining order.[5] On December 23, First Trust again wrote Judge Stein; this letter expressed the view that, based on the Court's December 1 opinion and the Court's December 5 denial as moot of First Trust's September 3 motion, the restraining order "has already been dissolved."[6] However, the letter continued, if First Trust's view were incorrect, then the status of the restraining order should be clarified.

By order dated December 24, Judge Stein granted First Trust's motion to vacate the restraining order "for the reasons set forth in this Court's Opinion and Order dated December 1, 1997," but stayed the vacatur ruling pending appeal. On December 31, Fidelity filed a notice of appeal from the December 24 order (2d Cir. Docket No. 97–9639). This appeal has been consolidated with No. 97–9589.

Prior to Judge Stein's December 1 ruling dismissing the "turnover" action, ING Bank had agreed to abide by Judge Brieant's restraining order and to prevent Philguarantee from selling any interest in the FLIRBs that was held through ING Bank, even though Philguarantee and ING Bank had refused to participate in the proceeding based on their position that the Court could not exercise personal jurisdiction over them. However, on January 13, 1998, as the parties were preparing their briefs for these appeals, Morgan received a letter from an official at ING Bank indicating that ING Bank had sold Philguarantee's participation interest in the FLIRBs on December 6, 1997.

### Discussion

■ The January 13 letter from ING Bank to Morgan raises the possibility that this appeal might be moot. This action is essentially an attachment (garnishment) pro-

---

5. Though the restraining order had been entered in 96 Civ. 407, Fidelity captioned its stay motion "97 Civ. 5184," but its memorandum in support of the stay and in opposition to First Trust's vacatur request was captioned both "96 Civ. 407" and "97 Civ. 5184."

6. First Trust's December 23 letter refers to the December 5 endorsement as an endorsement that was entered on December 8, the date reflected in the docket entries.

ceeding, and the January 13 letter suggests that the thing Fidelity seeks to attach—Philguarantee's interest in the FLIRBs—no longer exists, at least not within the ownership of Philguarantee. *See, e.g., Bank of New York Co. v. Northeast Bancorp, Inc.,* 9 F.3d 1065, 1067 (2d Cir.1993) ("In general, an appeal from the denial of a preliminary injunction is mooted by the occurrence of the action sought to be enjoined."). At oral argument, Fidelity disputed First Trust's claim of mootness both because of a factual doubt as to whether Philguarantee's interest had been sold on December 6 and a legal doubt that such a sale, even if it occurred, exonerated Philguarantee and ING Bank from liability for violation of the restraining order.

Though this Court has previously taken the position that in some circumstances subject matter jurisdiction may be assumed if the party asserting jurisdiction loses on the merits and the merits issue is easier to decide than the jurisdictional issue, *see Browning–Ferris Industries v. Muszynski,* 899 F.2d 151, 154–59 (2d Cir.1990), the Supreme Court has recently rejected that approach, declining to endorse what the Ninth Circuit has termed "the doctrine of hypothetical jurisdiction," *United States v. Troescher,* 99 F.3d 933, 934, n. 1 (9th Cir.1996). *See Steel Co. v. Citizens for a Better Environment,* — U.S. —, — — —, 118 S.Ct. 1003, 1012–16, 140 L.Ed.2d 210 (1998). Accordingly, we are obliged to consider the mootness issue.

As noted, the mootness issue presents both factual and legal sub-issues. We could simply remand at this point for resolution of the factual sub-issue. However, since the appeal is moot only if both sub-issues are resolved against the appellant, we have jurisdiction to consider the legal sub-issue on which mootness depends, and we deem it appropriate it to do so now, a course that offers some likelihood of avoiding a subsequent appeal.

■ Fidelity's legal objection to dismissal for mootness rests on the contention that, if Philguarantee sold its interest in the FLIRBs on December 6, it did so in violation of the restraining order that was issued by Judge Brieant, continued in effect by Judge Stein, and, in Fidelity's view, remains in effect even now by virtue of Judge Stein's stay of his December 24, 1997, order formally vacating the restraining order. If the sale occurred in violation of an order that was properly issued, Fidelity presumably deems itself entitled in this litigation to some form of relief from some of the parties as a remedy for such a violation. *See Reliance Insurance Co. v. Mast Construction Co.,* 84 F.3d 372, 376 (10th Cir.1996) (civil contempt available if injunction abates for reasons other than lack of jurisdiction); *Klett v. Pim,* 965 F.2d 587, 590 (8th Cir.1992) (same); *Backo v. Local 281, United Brotherhood of Carpenters and Joiners,* 438 F.2d 176, 182–83 (2d Cir. 1970); (compensatory civil contempt remedy available for violation of validly issued temporary restraining order); *cf. United States v. United Mine Workers,* 330 U.S. 258, 295, 67 S.Ct. 677, 696–97, 91 L.Ed. 884 (1947) (right to remedial relief for violation of injunction falls if injunction was erroneously issued). We therefore proceed to consider the premise of Fidelity's contention—that the restraining order remained in effect on December 6.

As we have recounted, Judge Stein issued a decision on December 1, rejecting Fidelity's contentions concerning the availability of garnishment and ordering the turnover proceeding dismissed. Pertinent to our current inquiry, by endorsement filed on December 5, Judge Stein denied as moot the pending September 3 motion of First Trust and Morgan to clarify the restraining order. Significantly, Judge Stein noted in his endorsement that the September 3 motion was moot "in light of the Opinion and Order dated 12/1/97," *i.e.,* the ruling dismissing the turnover petition. Thus, Judge Stein expressed the view that it was the dismissal of the turnover petition that rendered moot any further motion practice concerning the restraining order. The inevitable inference is that, in the District Court's view, the dismissal of the turnover petition ended Fidelity's attempt to satisfy its California judgment by attaching in the United States Philguarantee's interest in the FLIRBs, and, with that attempt ended, the restraining order was no longer effective. Philguarantee was therefore entitled to consider itself freed of any restraint concerning sale of its interest in the

FLIRBs after December 1, and was surely entitled to do so after December 5, when Judge Stein indicated that he regarded further consideration of the restraining order as moot.

The situation is not altered by the subsequent developments. Though First Trust sought a formal vacatur of the restraining order in its December 12 letter and Judge Stein granted the vacatur on December 24, these steps cannot serve to revive a restraining order that had been effectively terminated on December 1. As First Trust told the Court in its December 23 letter, it considered the restraining order effectively terminated by the December 1 ruling on the merits, but acted out of an abundance of caution to have the order formally terminated. The fact that Judge Stein acceded to First Trust's request for a formal order also cannot be deemed to revive, during the interim between December 1 and December 24, a restraining order effectively terminated on December 1.

■ Nor can the order be deemed revived by Fidelity's December 19 motion for a stay pending appeal of any order formally vacating the restraining order and Judge Stein's grant of such a stay on December 24, 1997. A district court's authority to "restore" an injunction pending appeal from a judgment "dissolving" an injunction, see Fed.R.Civ.P. 62(c), does not create *nunc pro tunc* liability for a party that acted in the interim between the dissolution and the restoration of the injunction. Moreover, Judge Stein's December 24 order did not indicate that it was "restoring" the restraining order; it simply stayed the formal vacatur order for whatever comfort, if any, that step might give to Fidelity. If, as is alleged, Philguarantee's interest was sold on December 6, Fidelity gained no comfort at all.

■ Thus, all that remains for consideration is the factual issue of whether Philguarantee's interest in the FLIRBs was sold on December 6. We leave that issue for determination by the District Court. If the Court determines that the interest was sold on December 6, the entire controversy concerning Philguarantee's interest in the FLIRBs has become moot. In that event, the judgment in 97 Civ. 5184, which concerns Phil-

guarantee's interest in the FLIRBs, should be vacated and the complaint dismissed. Whether 96 Civ. 407 should also be dismissed will depend on whether Fidelity can present the District Court with any valid basis for keeping alive its removed action to enforce the California judgment. If the Court determines that Philguarantee's interest was not sold on December 6 (or was sold during any time prior to December 1 or after December 24), then the pending appeals may be restored to this Court's docket by a letter request from any party filed within 10 days of the District Court's factual determination.

Accordingly, in both appeals, we remand for further proceedings consistent with this opinion.