**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**
_____

No. 96-20361
_____


MARATHON OIL COMPANY,

MARATHON INTERNATIONAL OIL COMPANY,

and

MARATHON PETROLEUM NORGE A/S,

                              Plaintiffs-Appellants/
                              Cross-Appellees,

          VERSUS

          A.G. RUHRGAS,

                              Defendant-Appellee/
                              Cross-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Texas
_____
June 22, 1998


Before POLITZ, Chief Judge, KING, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER, and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Today we decide whether, on removal from a state court, a district court has discretion to resolve a challenge to personal jurisdiction before ruling on a legally more difficult question concerning its alleged lack of subject-matter jurisdiction. We conclude that, at least in removed cases, district courts should

decide issues of subject-matter jurisdiction first and, only if subject-matter jurisdiction is found to exist, reach issues of personal jurisdiction. Accordingly, we vacate the judgment and remand with instruction to rule on the motion to remand to state court for lack of subject-matter jurisdiction.

I.

Marathon Oil Company, Marathon International Oil Company, and Marathon Petroleum Norge A/S (collectively "Marathon") sued Ruhrgas, a German gas supplier, under various tort theories in Texas state court. The alleged torts arose from Ruhrgas's relationship with Marathon Petroleum Company Norway ("MPCN"), a Marathon affiliate that is the equitable owner of a portion of the Heimdal natural gas field in the North Atlantic. Marathon Petroleum Norge A/S ("Norge"), as a Norwegian company, is required by law to hold legal title to MPCN's interest in the field.

MPCN entered into a sale agreement with Ruhrgas and other gas buyers whereby, for a premium price, the buyers would purchase MPCN's gas from the Heimdal field. This agreement provides that any disputes between MPCN and the buyers will be resolved through arbitration in Sweden.

At some point after the agreement was signed, the price of gas fell, and the buyers, including Ruhrgas, refused to pay MPCN the premium contract price. MPCN instituted arbitration proceedings in

Sweden, whereupon MPCN's affiliates[1] instituted these tort suits against Ruhrgas in Texas state court.  They allege that Ruhrgas conspired to monopolize the gas market, tortiously interfered with MPCN's business opportunities, and committed other, similar torts, which had the effect of harming them, as lenders to MPCN.

Ruhrgas removed the case to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332(a), federal arbitration jurisdiction under 9 U.S.C. § 205, and federal question jurisdiction under 28 U.S.C. § 1331 based on the federal common law of international relations.  Ruhrgas moved to dismiss for lack of personal jurisdiction and, in the alternative, requested a stay of proceedings pending arbitration.  Marathon moved to remand to state court, asserting a lack of federal subject-matter jurisdiction, and opposed compelled arbitration.

The district court determined that, under the caselaw of this circuit, it had discretion to address personal jurisdiction before reaching the legally more difficult subject-matter jurisdiction issue.  Finding personal jurisdiction lacking, the court dismissed the action and otherwise denied Ruhrgas's motion to compel arbitration.  Marathon appealed, arguing that, on a motion to remand, the district court should have considered subject-matter jurisdiction before deciding personal jurisdiction.[2]

A panel of this court determined that the district court

---

[1] Marathon Oil Company owns Marathon International Oil Company, which in turn owns Norge and MPCN.  MPCN is not a party to this suit.

[2] Ruhrgas cross-appealed, contending that it should have been entitled to an order compelling the plaintiffs to arbitrate.

lacked subject-matter jurisdiction, and thus it vacated the dismissal for lack of personal jurisdiction and remanded with instruction to remand to state court. Although acknowledging that "in some instances we have permitted the dismissal of an action for lack of personal jurisdiction without considering the question of subject matter jurisdiction,"[3] the panel concluded that "[t]he appropriate course [for a federal court] is to examine for subject matter jurisdiction constantly and, if it is found lacking, to remand to state court if appropriate, or otherwise dismiss."[4]

After the Supreme Court denied certiorari, we granted en banc review.[5] We now take this opportunity, as an en banc court, to reconcile the conflicting circuit precedent cited by the panel and to explain a district court's obligation concerning which challenge it should decide first when confronted with a removed case in which the existence of subject-matter jurisdiction is questionable and personal jurisdiction is contested. We conclude that the court should proceed to consider the issue of subject-matter jurisdiction (even if that is the more legally difficult issue) before proceeding to address whether it (or, for that matter, the state court) would have personal jurisdiction over the protesting defendant.

---

[3] *Marathon Oil Co. v. Ruhrgas, A.G.*, 115 F.3d 315, 318 (5th Cir.) (citing *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489 (5th Cir. 1993); *Asociacion Nacional de Pescadores v. Dow Quimica*, 988 F.2d 559 (5th Cir. 1993); *Walker v. Savell*, 335 F.2d 536 (5th Cir. 1964)), *cert. denied*, 118 S. Ct. 413 (1997).

[4] *Id.* (citing *Ziegler v. Champion Mortgage Co.*, 913 F.2d 228 (5th Cir. 1990)).

[5] *See Marathon Oil Co. v. Ruhrgas, A.G.*, 129 F.3d 746 (1997) (granting rehearing en banc).

II.

"[F]ederal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress." *Aldinger v. Howard*, 427 U.S. 1, 15 (1976). The Constitution provides that "[t]he judicial Power of the United States, shall be vested in one supreme court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST. art. III, § 1. "This language reflects a deliberate compromise[, known as the Madisonian Compromise,] reached at the Constitutional Convention between those who thought that the establishment of lower federal courts should be constitutionally mandatory and those who thought there should be no federal courts at all except for a Supreme Court with, *inter alia*, appellate jurisdiction to review state court judgments." RICHARD H. FALLON, ET AL., HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 348 (4th ed. 1996).

The effect of the compromise is this: "Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other [federal] court . . . derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922). Accordingly, "we should proceed with caution in construing constitutional and statutory provisions dealing with the jurisdiction of the federal courts," *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971),

5

because the Constitution leaves Congress the policy choice concerning how far the federal courts' jurisdiction should extend.

Under our federal constitutional scheme, the state courts are assumed to be equally capable of deciding state and federal issues.[6] To the extent that Congress elects to confer only limited jurisdiction on the federal courts, state courts become the sole vehicle for obtaining initial review of some federal and state claims. *Cf., e.g., Victory Carriers*, 404 U.S. at 212. Where Congress has given the lower federal courts jurisdiction over certain controversies, "'[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which [a federal] statute has defined.'" *Id.* (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)).

The importance of both the lower federal courts' constitutional and statutory subject-matter jurisdiction should not be underestimated. "Because of their unusual nature, and because *it would not simply be wrong but indeed would be an unconstitutional invasion of the powers reserved to the states if federal courts were to entertain cases not within their jurisdiction*, the rule is well settled that the party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the competence of that court." 13 CHARLES A.

---

[6] *See Tafflin v. Levitt*, 493 U.S. 455, 458 (1990); *see also Robb v. Connolly*, 111 U.S. 624, 637 (1884) (Harlan, J.) ("Upon the State courts, equally with the courts of the Union, rests the obligation to guard, enforce, and protect every right granted or secured by the Constitution of the United States . . . .").

WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3522, at 61-62 (2d ed. 1984) (emphasis added).[7]

When a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power. *See Oliver v. Trunkline Gas Co.*, 789 F.2d 341, 343 (5th Cir. 1986) (Higginbotham, J.). "Federal courts are courts of limited jurisdiction by origin and design, implementing a basic principle of our system of limited government. In sum, we do not visit a mere technicality upon the parties [by remanding to state court because their case falls outside the jurisdictional statutes]. Rather, we uphold a basic tenet of the American system of diffused political and judicial power." *Id.*

Since the panel issued its opinion, the Supreme Court has reminded us that our jurisdiction must be considered at the outset of a case. This Term, the Court rejected what the Ninth Circuit had labeled the "'doctrine of hypothetical jurisdiction'"SSthe process of "'assuming' [Article III] jurisdiction for the purpose of deciding the merits" of a case. *Steel Co. v. Citizens for a Better Env't*, 118 S. Ct. 1003, 1012 (1998) (majority opinion) (quoting *United States v. Troescher*, 99 F.3d 933, 934 n.1 (9th Cir. 1996)). The *Steel Co.* Court remarked:

> This is essentially the position embraced by several Courts of Appeals, which find it proper to proceed immediately to the merits question, despite jurisdictional objections, at least where (1) the merits

---

[7] *See, e.g.*, *Mansfield, C. & L.M. Ry. v. Swan*, 111 U.S. 379, 382 (1884) (stating that "the rule [that a court not act outside its jurisdiction], *springing from the nature and limits of the judicial power of the United States*, is inflexible and without exception") (emphasis added).

question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied. . . .

We decline to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers. This conclusion should come as no surprise, since it is reflected in a long and venerable line of our cases. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall. 506, 514, 19 L. Ed. 264 (1868). . . . The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S. Ct. 510, 28 L. Ed. 462 (1884).

. . .

"[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' . . . ." *Arizonans for Official English v. Arizona*, . . . 117 S. Ct. 1055, 1071 . . . (1997). . . .

*Id.* at 1012-13.

The rule that we first address our jurisdiction is so fundamental that "we are obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977) (citations omitted). "The general rule is that the parties cannot confer on a federal court jurisdiction that has not been vested in that court by the Constitution and Congress. This means that the parties cannot waive lack of [subject-matter] jurisdiction by express consent, or by conduct, or even by

8

estoppel; the subject matter jurisdiction of the federal courts is too basic a concern to the judicial system to be left to the whims and tactical concerns of the litigants." 13 WRIGHT ET AL., *supra*, § 3522, at 66-68 (citations omitted); *see, e.g.*, *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

## III.

Ruhrgas does not dispute that a federal district court must determine its jurisdiction before proceeding to the merits of the case. It contests only the proposition that the federal court must reach the issue of *subject-matter* jurisdiction before reaching a challenge to *personal* jurisdiction. Ruhrgas argues that the district court may decide the personal jurisdiction challenge first, because "jurisdiction is jurisdiction is jurisdiction."

Because a federal district court must have both subject-matter jurisdiction over the removed controversy and personal jurisdiction over the defendant, so the argument goes, the court should have discretion to decide the easier jurisdictional challenge first, to save judicial resources and to avoid tougher legal issues. We find Ruhrgas's advocacy of a discretionary rule in the removal context unpersuasive, as we explain.

### A.

Although the personal jurisdiction requirement is a "fundamental principl[e] of jurisprudence," *Wilson v. Seligman*,

9

144 U.S. 41, 46 (1892), without which a court cannot adjudicate, the requirement of personal jurisdiction, unlike that of subject-matter jurisdiction, "may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue." *Insurance Corp. of Ireland*, 456 U.S. at 704; *see also* FED. R. CIV. P. 12(h). The defendant's ability to waive the defense arises from the reality that "[t]he requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause . . . . It represents a restriction on the judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Insurance Corp. of Ireland*, 456 U.S. at 702; *see also Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (quoting the same).

The Supreme Court has carefully elucidated the distinctions between subject-matter and personal jurisdiction:

> Subject-matter jurisdiction, then, *is an Art. III as well as a statutory requirement*; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign. Certain legal consequences directly follow from this. For example, no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings. Similarly, a court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion. '[T]he rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, which requires this court, of its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record.' *Mansfield, C. & L.M. R. Co. v. Swan*, 111 U.S. 379, 382 (1884).

10

> *None of this is true with respect to personal jurisdiction.*

*Insurance Corp. of Ireland*, 456 U.S. at 702 (emphasis added) (citations omitted). The Court therefore has indicated that "jurisdiction" is not always "jurisdiction." The distinction is that subject-matter jurisdictional requirements prevent our overreaching into the powers that the Constitution and Congress have left to the state courts, while personal jurisdiction requirements prevent both state and federal courts from upsetting the defendant's settled expectations as to where it can reasonably anticipate being sued. *See id.* at 702-04.[8]

The *Steel Co.* majority opinion plainly contemplates *Article III* jurisdiction in its use of the term "jurisdiction." *See Steel Co.*, 118 S. Ct. at 1013 ("Justice STEVENS' arguments . . . asserting that a court *may* decide the cause of action before resolving Article III jurisdictionSSare readily refuted."). Although that case dealt with the easier issue of whether a federal court could pretermit questions about its subject-matter jurisdiction in order to reach a case's "merits," the teachings of *Steel Co.*SScombined with the reasons we discuss in more detail belowSScounsel against a discretionary rule in the case before us.

---

[8] Following oral argument in the instant en banc proceeding, the Supreme Court once again has reminded us of the distinction between restrictions on subject-matter jurisdiction inherent in Article III and those that operate as an external limitation on an Article III court's adjudication. *See Calderon v. Ashmus*, 118 S. Ct. 1694, 1697 n.2 (1998).

11

B.

A federal court's dismissal for lack of personal jurisdiction affects the state court from which a case was removed in a way that a remand for lack of subject-matter jurisdiction does not. As Ruhrgas concedes, dismissal for a lack of personal jurisdiction adjudicates the matter between the parties and is binding on the state court.[9]

It follows that in the removal context, when a federal district court that lacks federal subject-matter jurisdiction dismisses instead for want of personal jurisdiction, it impermissibly wrests that decision from the state courts. This follows from the fact that because, after remand, such a case would have to remain within the state courts, *see, e.g.*, *Healy*, 292 U.S. at 270, questions of personal jurisdiction necessarily would fall within the state courts' exclusive, residual jurisdiction. Those courts are entitled to their own, independentSSand absent a controlling Supreme Court decisionSSeven conflicting interpretation of their state's long-arm statute and of the minimum contacts requirements of the federal Due Process Clause.[10]

---

[9] "It has long been the rule that principles of res judicata apply to jurisdictional determinationsSSboth subject matter and personal. See *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940); *Stoll v. Gottlieb*, 305 U.S. 165 (1938)." *Insurance Corp. of Ireland*, 456 U.S. at 702 n.9; *see also Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990) (citing the same).

[10] *Cf., e.g., Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("Under [our] system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."); *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 342 (1816) ("It was foreseen, that in the exercise of their ordinary jurisdiction, state courts would incidentally take cognisance of

(continued...)

12

A federal court's decision that it lacks subject-matter jurisdiction, by contrast, returns the case to the state court so that it can adjudicate or dismiss. That decision does not intrude on "[t]he power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts . . . ." *Healy*, 292 U.S. at 270.

Contrary, therefore, to Ruhrgas's statement at oral argument that we are merely "reliev[ing] the state court of the burden of ruling on personal jurisdiction," the discretionary rule threatens the Article III principles of separation of powers and federalism in the context of a removed case. In sum, a federal court can remand a removed case for lack of subject-matter jurisdiction without offending the right and residual power of a state court to adjudicate, or dispose of, that case, but the federal court cannot do the same by assuming that it has subject-matter jurisdiction in order to reach an easier personal jurisdiction issue.[11]

C.

_____

(...continued)
cases arising under the constitution, the laws and treaties of the United States.").

[11] Implicit in Ruhrgas's advocacy of a discretionary rule in the removal context is the notion that a defendant's right of removal is of the same dignity as the plaintiff's choice of forum. "The defendant's right to remove and the plaintiff's right to choose the forum are not equal, [however,] and uncertainties are resolved in favor of remand." 16 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 107.05, at 107-24 through 107-25 & nn. 5, 6 (3d ed. 1997) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104-07 (1941)). This presumption in favor of remand underscores that in the removal context, where the plaintiff chose state court, that court's interest in adjudicating the issue of personal jurisdiction, absent federal subject-matter jurisdiction, must be given special consideration.

13

The usurpation of the state courts' residual jurisdiction to adjudicate the personal jurisdiction question is not the only reason for eschewing a discretionary rule in the removal context. A discretionary rule may also create incentives for defendants to subvert the orderly scheme for removing cases by acting opportunistically.

State-court defendants who face, at the margin of existing precedent, a more plaintiff-friendly due-process/minimum-contacts jurisprudence in state court could, under the discretionary rule, manufacture a convoluted theory of federal subject-matter jurisdiction, remove to federal court, and then take advantage of a stricter interpretation of personal-jurisdiction requirements in federal court, to have the case dismissed rather than remanded. The effect may be not only to reward the defendant's manipulation but also to make *our* interpretation of the state long-arm statute, and of the federal minimum contacts analysis, the default for the state courts in this circuit, whereas in the usual course, these state courts would be entitled to have their own interpretation of state and federal law, which would be reviewable only by the state courts and ultimately by the Supreme Court.

D.

We also find the discretionary rule unpersuasive in this case because its justificationSSjudicial efficiencySSis less weighty than are other, constitutionally based concerns. A principled discretionary rule also may not be very efficient.

14

First, our desire for efficiency cannot override separation-of-powers concerns.  The latter rationale is of constitutional import, while the former is not:  "[S]eparation of powers was adopted in the Constitution 'not to promote efficiency but to preclude the exercise of arbitrary power.'  Time has not lessened the concern of the Founders in devising a federal system which would likewise be a safeguard against arbitrary government." *Bartkus v. Illinois*, 359 U.S. 121, 137 (1959) (quoting *Myers v. United States*, 272 U.S. 52, 240, 293 (1926) (Brandeis, J., dissenting)).  Indeed, this court has forcefully recognized this distinction:  "We are fully aware of the inefficiency and expense to which these [parties] are being subjected. . . [but w]e cannot avoid this result [of remanding to state court for lack of subject-matter jurisdiction], for the rules of federal jurisdiction, while sometimes technical and counterintuitive, are strict and mandatory."  *Oliver*, 789 F.2d at 343 (Higginbotham, J.).

Second, even if we were to fashion a discretionary rule, there is no certainty that it would be more convenient to district courts than the formulation we adopt today.  Because we would wish to draw a discretionary rule in harmony with the constitutional principles that we have outlined, any resulting rule often would cause district courts to spend more time and effort than previously, when considering whether personal jurisdiction should be decided before subject-matter jurisdiction.  In any given case, it might be more efficient for a district court to address the tough legal issues of subject-matter jurisdiction rather than to engage in a

15

difficult balancing inquiry regarding personal jurisdiction.

IV.

Therefore, as the panel stated, in a case such as this one, "[t]he appropriate course is to examine for subject matter jurisdiction constantly and, if it is found lacking, to remand to state court if appropriate, or otherwise dismiss." *Marathon*, 115 F.3d at 318 (citing *Ziegler v. Champion Mortgage Co.*, 913 F.2d 228 (5th Cir. 1990)). Such a methodology respects the limits that Congress has placed on the federal courts to adjudicate cases. It also accords the proper respect to the state courts, as the residual courts of general jurisdiction, to make the personal jurisdiction inquiry when we lack either constitutional or statutory subject-matter jurisdiction over a removed case. *See Healy*, 292 U.S. at 270.

V.

A.

Our holding not only is supported by the aforementioned constitutional precepts, but also is grounded in our prior caselaw. Today we follow our holding in *Ziegler v. Champion Mortgage Co.*, 913 F.2d 228, 229-30 (5th Cir. 1990).

In *Ziegler*, a plaintiff sued in state court alleging a breach of contract. *See id.* at 229. The defendants removed, asserting diversity jurisdiction. *See id.* When the plaintiff moved to remand because diversity jurisdiction was lacking, defendant

16

Champion Mortgage moved to dismiss for want of personal jurisdiction. *See id.* That motion to dismiss was granted; the motion to remand was never addressed, because the district court concluded that its dismissal rendered the remand motion moot. *See id.* Final judgment was entered for the other defendants on the merits, and the plaintiff appealed. We *sua sponte* found complete diversity lacking and vacated the judgment. *See id.*

In doing so, we reiterated that "[f]ederal courts are courts of limited jurisdiction; therefore, we have a constitutional obligation to satisfy ourselves that subject matter jurisdiction is proper before we engage in the merits of an appeal." *Id.* Our action of vacating the dismissal of Champion Mortgage for lack of personal jurisdiction established that the district court should have resolved subject-matter jurisdiction before entertaining the attack on personal jurisdiction.

The *Ziegler* court was aware that this part of its ruling could be perceived to be in tension with *Walker v. Savell*, 335 F.2d 536, 538 (5th Cir. 1964), in which we had stated that "the federal court had a right to consider the motion to quash service and determine the jurisdictional question before remanding the case to the state court." *Id.* The *Ziegler* court, however, found *Walker* distinguishable, because *Walker* dealt only with a choice between deciding a personal jurisdiction challenge and a remand motion based on a defect in *removal* jurisdiction, not one based on a defect in *subject-matter* jurisdiction. *See Ziegler*, 913 F.2d at 230.

17

"It is beyond doubt that although the parties can waive defects in removal, they cannot waive the requirement of original subject matter jurisdictionSSin other words, they cannot confer jurisdiction where Congress has not granted it." *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1546 (5th Cir. 1991). The defendant in *Walker* was unable to remove to federal court *not* because there was no federal subject-matter jurisdiction, but because 28 U.S.C. § 1441(b) prohibits removal by an in-state defendant in diversity cases.[12] Such a removal defect is waivable if not timely asserted by the plaintiff. *See* 28 U.S.C. § 1447(c); *In re Shell Oil Co.*, 932 F.2d 1518, 1522-23 (5th Cir. 1991).

Contrariwise, in this case, neither party contends that the plaintiffs challenged removal on the basis that the defendant had failed to meet the waivable requirements of the removal statutes. Rather, the plaintiffs argue that the district court would lack subject-matter jurisdiction had the plaintiffs originally brought this case in federal court. Such an objection is not subject to waiver, *see Baris*, 932 F.2d at 1546, and is, as explained above, a more fundamental concern of the district court than is a waivable defect.

When subject-matter jurisdiction is not in question, accordingly, we continue to believe that the district court should enjoy the freedom outlined in *Walker* to decide which waivable jurisdictional defect to address in the first instance. "Thus,

---

[12] *See Walker*, 335 F.2d at 539 (observing that "this case was, under the terms of the removal statute, unquestionably in the district court even though later subject to a proper motion for remand").

18

resting as it does on the broader issue of subject matter jurisdiction, our decision today does not affect this Court's holding in *Walker v. Savell*." *Ziegler*, 913 F.2d at 230.

### B.

Ruhrgas also argues that our rejection of the discretionary rule would be inconsistent with the well-settled principle that federal courts have jurisdiction to conduct discovery, to issue sanctions, to hold a trial, and to assess costs, even though they may lack subject-matter jurisdiction. *See, e.g.*, *Willy v. Coastal Corp.*, 503 U.S. 131, 135-36 (1992) (upholding FED. R. CIV. P. 11 sanctions even though the district court eventually concluded that it lacked Article III jurisdiction). The flaw with this argument, however, is that the functions to which Ruhrgas points do not have the adverse consequences of making a case-dispositive decision for the state court.

Should a federal court without statutory subject-matter jurisdiction issue sanctions, assess costs, hold a trial, or conduct discovery, any subsequent remand and proceedings that follow in state court will remain unaffected by those federal court actions. Such is not the case when a federal court dismisses for want of personal jurisdiction. In the instant case, for example, the dismissal for lack of personal jurisdiction not only ends all federal court litigation, but also ends all litigation in the state

19

court to which the case would otherwise be remanded.[13]

C.

1.

We granted en banc review in part to resolve the conflicting precedents of this court, for *Ziegler* conflicts with *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1494 (5th Cir. 1993), and *Asociacion Nacional de Pescadores v. Dow Quimica*, 988 F.2d 559, 566-67 (5th Cir. 1993).[14]

In *Asociacion Nacional*, the district court denied plaintiffs' motion to remand for want of subject-matter jurisdiction and proceeded to dismiss for lack of personal jurisdiction. *See Asociacion Nacional*, 988 F.2d at 563. On appeal, a panel of this court decided that the court had erred in failing to remand, as there was no federal subject-matter jurisdiction. *See id.* at 563-66. Instead of vacating the dismissal for lack of personal jurisdiction and remanding with instructions to remand to state court, the panel affirmed. *See id.* at 566-67.

---

[13] Given existing caselaw, the federal court's determination that there was no personal jurisdiction would be preclusive on the state court from which the case was removed. *See supra* note 9 (citing cases).

[14] In accordance with our rule of orderliness, subsequent panels cannot overrule prior panels, absent en banc review or a change in law by Congress or the Supreme Court. *See, e.g., Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Accordingly, *Ziegler* remains good law, even in the face of *Villar* and *Asociacion Nacional*. Nonetheless, and especially in view of the fact that the *Asociacion Nacional* and *Villar* panels apparently were unaware of *Ziegler*, we use this en banc opportunity to eliminate any confusion.

The panel in *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1066 (5th Cir. 1992), also mentioned, in *dictum*, that *Walker* supports a discretionary rule. That observation was not essential to the holding. Accordingly, that case (shorn of its *dictum*) remains unaffected by our decision today.

The panel began its analysis by noting the "conceptually troubling" proposition that we could "sustain[] an order by the district court in a case over which the court did not have subject matter jurisdiction." *Id.* at 566. Unaware, however, that *Ziegler* had already foreclosed an expansion of *Walker* for the very "conceptually troubling" reasons that the *Asociacion Nacional* panel had identified, the panel expanded *Walker*'s holding and affirmed the dismissal for lack of personal jurisdiction. *Id.* at 566-67.

A month after *Asociacion Nacional*, still another panel overlooked *Ziegler*'s decision not to extend *Walker*. In *Villar*, 990 F.2d at 1494, we opined that "[i]n *Walker*, we clearly held that district courts have the power to rule on motions challenging personal jurisdiction before reaching motions to remand." *Id.*

For the reasons explained above, *Ziegler*'s interpretation of *Walker* is the better one. Indeed, had the *Villar* and *Asociacion Nacional* panels made their decisions in the knowledge, and with the benefit, of *Ziegler*'s analysis,[15] they too may have reached a different result.

## 2.

Ruhrgas argues that turning back the reach of *Walker* would conflict with the view of the Second Circuit, which has adopted a discretionary rule. *See Cantor Fitzgerald, L.P. v. Peaslee*,

---

[15] Although *Ziegler* was decided three years prior to *Asociacion Nacional* and *Villar*, neither opinion mentions *Ziegler*.

21

88 F.3d 152, 155 (2d Cir. 1996).[16]  We find Ruhrgas's concerns unjustified; its reliance on *Cantor Fitzgerald* is misplaced, as we now explain.

First, *Cantor Fitzgerald* conflicts with an earlier Second Circuit opinion, *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674 (2d Cir. 1990), in which that court held that "[t]he court below mistakenly passed on the asserted absence of personal jurisdiction over the Guaranty Association defendants.  Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, 'the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.'"  *Id.* at 678 (quoting 5 CHARLES A. WRIGHT & ARTHUR MILLER,

---

[16] *See also Cantor Fitzgerald*, 88 F.3d at 155 ("In our opinion, the District Court properly exercised its discretion in first deciding the motion to dismiss for lack of personal jurisdiction over the defendants before considering the question of federal subject-matter jurisdiction.").  The Seventh Circuit, as well, mentioned and assumed a *Villar*-type interpretation of *Walker*, but ultimately expressed no opinion on the matter.  *See Allen v. Ferguson*, 791 F.2d 611, 616 (7th Cir. 1986) ("[E]ven assuming *arguendo* that the *Walker* rule is correct, we find that the district court erred in deciding Ferguson's motion to dismiss for want of personal jurisdiction before determining whether there was complete diversity.").  That court also stated, in passing, that the district court could have discretion to decide an easier personal jurisdiction challenge before addressing questions about its subject-matter jurisdiction when the federal and state courts' standards for personal jurisdiction would render the same conclusion that no personal jurisdiction exists.  *See id*. at 615.

Although this rule is appealing because it recognizes the comity interests inherent in any exercise of the district court's discretion, ultimately we find this conclusion "conceptually troubling." *Asociacion Nacional*, 988 F.2d at 566. Admittedly, when we have proper jurisdiction, we often apply state courts' interpretations of their own laws under a "no harm, no foul" type rule (That is, we assume the state court would not change its interpretation of its own law in the case before us).  When we lack subject-matter jurisdiction, however, we should leave the state courts free to apply their own law, as well as federal law, as they have interpreted it in the past, or as they wish to reinterpret it in the present.

22

FEDERAL PRACTICE AND PROCEDURE § 1350 (1st ed. 1969)).  In light of *Rhulen*, the Second Circuit appears to have internally inconsistent views on this issue.[17]

Second, the *Cantor Fitzgerald* court grounded its holding primarily on *Browning-Ferris Indus. v. Muszynski*, 899 F.2d 151, 159-60 (2d Cir. 1990).[18]  *Muszynski* was one of the cases adopting the now-discredited "doctrine of hypothetical jurisdiction"§§finding that a federal court could reach an easier merits question before addressing a harder subject-matter jurisdiction challenge.  *See Steel Co.*, 118 S. Ct. 1012 (citing *Muszynski* for this proposition).  Once a court has determined that it can pretermit its jurisdiction to reach the merits, the decision to pretermit subject-matter jurisdiction to reach personal jurisdiction is easily made.  As the Second Circuit has recently recognized, however, *Muszynski* is no longer good law after *Steel Co. See Fidelity Partners, Inc. v. First Trust Co.*, 1998 U.S. App. LEXIS 8072, at *14-*15 (2d Cir. Apr. 27, 1998) (Nos. 97-9589L, 97-963CON).

In sum, not only are the cases that Ruhrgas cites to support its advocacy of a discretionary rule in a case such as ours

---

[17] *Compare Rhulen*, 896 F.2d at 675-76 ("[T]he order below will be affirmed but on the ground that the Court lacks subject matter jurisdiction, which precludes consideration of the existence of personal jurisdiction."), *with Cantor Fitzgerald*, 88 F.3d at 155.

[18] The *Cantor Fitzgerald* court also relied on *Can v. United States*, 14 F.3d 160, 162 n.1 (2d Cir. 1994), and *Bi v. Union Carbide Chems. & Plastics Co.*, 984 F.2d 582, 584 n.2 (2d Cir. 1993).  Neither of these cases, however, supports *Cantor Fitzgerald*'s holding.  *Can* discusses *which* subject-matter jurisdiction challenge a district court should address first.  *See Can*, 14 F.3d at 162 n.1. *Bi* adopts no rule, but instead addresses subject-matter jurisdiction *before* considering personal jurisdiction.  *See Bi*, 984 F.2d at 584 n.2.

"conceptually troubling," *Asociacion Nacional*, 988 F.2d at 566, but they are also aberrational. Accordingly, we decline to follow their lead and instead adopt the reasoning of *Ziegler* and *Rhulen*.

## VI.

We now address some of Ruhrgas's other arguments. Specifically, we discuss the fairness implications for the removing defendant; the applicability of the minimum-contacts analysis in determining whether subject-matter jurisdiction exists; and the argument that our rule may have the effect of unnecessarily entangling the federal courts in difficult issues of state law and the state courts in issues of federal law.

## A.

We are mindful that the personal-jurisdiction requirement embodies a rule of fundamental fairness for defendants. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). We therefore appreciate Ruhrgas's argument that it would be unfair to force the defendant, which we assume *arguendo* is not subject to personal jurisdiction in any court, to litigate, upon removal, subject-matter jurisdiction in federal court only to be forced to return to state court to litigate personal jurisdiction there (if federal subject-matter jurisdiction is found not to exist).

We find this argument ultimately unpersuasive, however. The defendant's action in seeking to invoke the jurisdiction of the federal courts, through removal, indicates its willingnessSSindeed,

24

its preferenceSSto litigate the issue of subject-matter jurisdiction, a question on which it has the burden of proof.[19] Had the issue of personal jurisdiction been more easily resolved in its favor than was the question of subject-matter jurisdiction, the defendant had the option to save itself the time and expense of litigating federal subject-matter jurisdiction by litigating the easily-resolved personal jurisdiction challenge in the state courts before removal. In any case, the fundamental-fairness requirement of personal jurisdiction will still be examinedSSby either state or federal courtSSafter the district court has made its inquiry into subject-matter jurisdiction.[20]

B.

---

[19] *See Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)).

[20] We recognize that there may be a few instances in which "the jurisdictional facts are too intertwined with the merits to permit the [remand motion] determination to be made independently . . . [thus forcing the court to] leave the jurisdictional determination to trial." 2 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.30[3], at 12-37 (3d ed. 1998). Although many of the same considerations we express today may apply to such cases, other concerns may arise as well. Because the instant case deals solely with the decision to exercise discretion to address personal jurisdiction first because the *legal* issues of subject-matter jurisdiction are more complex than the legal issues surrounding personal jurisdiction, we have no occasion to opine on what rule should apply when the facts needed to support subject-matter jurisdiction are so "intertwined with the merits" of the case that they must await trial.

We also do not mean to straightjacket the district courts by designating what proceedings they may conduct, or in what order those proceedings must be conducted, when there is a pending issue as to subject-matter jurisdiction. Accordingly, while the *Ruhlen* court and professors Wright and Miller opine that a court should consider a rule 12(b)(1) challenge first, *see supra*, we read this to mean that the court must *rule* on the subject-matter jurisdiction challenge first. In their discretion, however, the courts are free to allow various aspects of the proceedings to go forward, as efficiency and fairness may dictate. "The district court is free to decide the best way to deal with [matters covered by rule 12(b)], because neither the federal rules nor the statutes provide a prescribed course." 2 MOORE ET AL., *supra*, § 12.50, at 12-102 through 12-103.

25

Ruhrgas also argues that, in cases like the instant one, our determination of subject-matter jurisdiction depends on an analysis of personal jurisdiction.  *See Villar*, 990 F.2d at 1494-95.  Because we are going to have to conduct the minimum contacts inquiry in any event, Ruhrgas avers, we might as well do it at the outset.

Specifically, Ruhrgas contends that Norge is included as a plaintiff solely to defeat federal diversity jurisdiction.  One of the ways in which Ruhrgas attempts to prove that Norge has been "fraudulently joined" is to show that Norge could assert no claims against it.  *See Marathon*, 115 F.3d at 319.  To show that Norge has no viable claim, Ruhrgas argues that Norge could not subject Ruhrgas to service of processSSthat is, personal jurisdictionSSin Texas state court.

Assuming, *arguendo*, that *Villar* correctly found that the minimum contacts analysis is relevant to a fraudulent joinder analysis, it does not alter our obligation to decide questions of subject-matter jurisdiction at the outset.  For instance, assume that the district court determines that because Norge cannot serve Ruhrgas, Norge has been fraudulently joined.  It does not follow that we should allow the district court the discretion to address personal jurisdiction first.  Rather, in such a case, given the principles we have outlined above, the district court should find federal diversity subject-matter jurisdiction to exist, and proceed to decide the personal jurisdiction challenge without fear of trampling on the state courts' residual domain.

26

C.

Ruhrgas maintains that the rule we adopt could entangle federal courts unnecessarily in difficult decisions of state law joinder, and state courts in the federal law of personal jurisdiction. Specifically, Ruhrgas first argues that it plans to raise fraudulent joinder to establish diversity jurisdiction; the court's analysis will require the resolution of complex areas of state law. Second, Ruhrgas claims that the question of personal jurisdiction does not interfere with the state courts' autonomy, as the Texas long-arm statute reaches as far as the Constitution permits;[21] the inquiry, thus, is one of constitutional, not state, law.

Although we appreciate Ruhrgas's first argument, our adoption of it would create incentives for defendants in Ruhrgas's position to act opportunistically in the removal context. Essentially, the defendant's argument is that because it plans to invoke a convoluted theory of subject-matter jurisdiction to support removalSSone requiring difficult interpretations of state lawSSwe should dispense with its need to prove that federal subject-matter jurisdiction exists and proceed to grant it a dismissal for lack of personal jurisdiction. We find that argument unappealing.

We dispense with Ruhrgas's second argument even more expeditiously. As we have already described, Article III envisions state courts as the default for all claims, based in both state and

---

[21] *See Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990) (interpreting the Texas long-arm statute to reach the federal constitutional limit).

27

federal law. *See Healy*, 292 U.S. at 270; *supra* part II. Where Congress has not extended federal subject-matter jurisdiction, we should respect the Article III default of residual state court jurisdiction. *See, e.g.*, 13 WRIGHT ET AL., *supra*, § 3522, at 61-62. Therefore, although the ultimate issue might prove to be one of federal law, we may not deprive state courts of their authority to pass on that question.[22]

## VII.

### A.

We end by noting that our ruling today applies only to removed cases and is otherwise limited as mentioned above. Cases brought originally in the federal courts may raise other issues that we do not face in the instant case, so any opinion as to those issues would, as a consequence, be premature.

### B.

We also understand that the district court's decision to address the personal jurisdiction question at the outset was reasonably made, given the state of our existing precedent. Because of the novelty of some of the subject-matter jurisdiction claims, and because our court has been understandably pre-occupied in reconciling the confused state of our precedent concerning a

---

[22] *Cf. Tafflin*, 493 U.S. at 467 ("[W]e note that, far from disabling or frustrating federal interests, '[p]ermitting state courts to entertain federal causes of action facilitates the enforcement of federal rights.'") (quoting *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 n.4 (1981)).

district court's obligations, we remand the issue of whether there exists federal subject-matter jurisdiction to the able district court for its determination in the first instance.[23]

The judgment is VACATED, and this cause is REMANDED with instruction to address the motion to remand to state court for lack of federal subject-matter jurisdiction, and for other proceedings, as appropriate, consistent with this opinion.[24]

ENDRECORD

---

[23] Although the district court may consider the panel opinion persuasive on the question of subject-matter jurisdiction, that opinion has been vacated and thus is no longer binding precedent, *see* 5TH CIR. R. 41.3; *United States v. Manges*, 110 F.3d 1162, 1173 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1675 (1998), and we express no opinion on that issue.

[24] Ruhrgas's motion to strike the plaintiffs' response to the amici filings is DISMISSED as moot.

PATRICK E. HIGGINBOTHAM, Circuit Judge, with whom KING, JOLLY, DAVIS, JONES, DUHE', and BARKSDALE, Circuit Judges, join, dissenting:

Until the decision of the panel in this case, affirmed today by the majority, no appellate court in the United States had held that federal district courts may never dismiss a case for lack of personal jurisdiction without first deciding their subject matter jurisdiction. We elaborate the principles behind the regimen that had been in place in our circuit, concluding that the majority's claim of federalism on the facts before us is impoverished, a cape for unauthorized appellate rule making.

I.

Marathon Oil Company (MOC) is an Ohio corporation with its principal place of business in Houston, Texas. In 1976, MOC's affiliate, Marathon International Oil (MIO), purchased two European concerns, Pan Ocean and its subsidiary Pan Norge, who collectively held a North Sea gas production license. Pan Ocean later became Marathon Petroleum Norway (MPN), while Pan Ocean Norge was later renamed Marathon Petroleum Norge (Norge). The gas production license gave the Marathon companies the rights to 24% of the Heimdal gas field in the North Sea.

According to the Marathon plaintiffs, starting in the 1970's, Ruhrgas, A.G.; Statoil; and various other European companies secretly conspired to monopolize the gas market in Western Europe. Ruhrgas is Germany's primary gas production firm, while Statoil,

Norway's state-owned gas company, has held since 1975 a 40% interest in the Heimdal field. The plaintiffs allege that the conspirators planned to control the Western European gas market by channeling a large portion of North Sea gas reserves through Ruhrgas's production facilities in Germany.

As part of this "plan," Ruhrgas entered into an agreement in 1984 with MPN concerning the Heimdal gas field. Pursuant to the Heimdal Agreement, MPN was to drill gas from the Heimdal field and transfer it to the Ruhrgas plant in Germany. In exchange, Ruhrgas promised to provide MPN with premium prices for its gas and guaranteed pipeline transportation tariffs. The Heimdal Agreement contained a clause binding its signatories to arbitration in Stockholm, Sweden, under Norwegian law. The plaintiffs claim that Ruhrgas never had any intention of honoring its commitments under the Agreement.

The Marathon plaintiffs in this case, MOC, MIO, and Norge, were not formal parties to the Agreement, and they purport not to be seeking its enforcement in this litigation. Rather, the plaintiffs allege that Ruhrgas's representations regarding the Agreement duped them into investing in their subsidiary, MPN, $300 million for the development of the Heimdal field and the erection of an underseas pipeline to the Ruhrgas plant in Germany. According to the plaintiffs, this investment played right into Ruhrgas's hands; after having expended such enormous sums to construct a pipeline between the Heimdal field and the Ruhrgas plant, the Marathon companies had no choice but to sell the Heimdal

31

gas to Ruhrgas on terms dictated by Ruhrgas. Norge additionally asserts that the value of its license to produce Norwegian gas, dependant upon the Ruhrgas-MPN contract, was also held hostage by Ruhrgas.

Allegedly, Ruhrgas later failed to honor the premium prices and tariffs that it had promised to MPN. Thereafter, MOC, MIO, and Norge sued Ruhrgas in Texas state court for fraud, misrepresentation, civil conspiracy, and tortious interference with business relationships. Ruhrgas removed the case to federal court, invoking both diversity and federal question jurisdiction, as well as the statutory provision for the removal of cases relating to arbitration agreements falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, see 9 U.S.C. § 205. Once in federal court, Ruhrgas moved for a stay of proceedings pending the European arbitration of MPN's case, but the district court denied Ruhrgas's request. Ruhrgas then moved to dismiss the case for lack of personal jurisdiction and on grounds of *forum non conveniens*, while Marathon countered by moving to remand for lack of subject matter jurisdiction. The district court, relying on long-standing Fifth Circuit precedent, see, e.g., Walker v. Savell, 335 F.2d 536 (5th Cir. 1964), opted to decide first Ruhrgas's challenge to personal jurisdiction. The court granted Ruhrgas's motion to dismiss for lack of personal jurisdiction, rendering the plaintiffs' motion to remand moot. The court later denied Ruhrgas's motion to reconsider its previous decision not to stay all proceedings pending arbitration.

Both parties appealed.  Despite the fact that the district court had dismissed the case for want of personal jurisdiction, a panel of our court held that it could not ignore the plaintiffs' challenge to subject matter jurisdiction.  See Marathon Oil Co. v. Ruhrgas, A.G., 115 F.3d 315, 317-19 (5th Cir. 1997).  Concluding that subject matter jurisdiction was indeed lacking, the panel vacated the judgment of the district court and ordered the case remanded to state court.

II.

A.

No rule of civil procedure denies a federal district court the discretion to dismiss a case for want of jurisdiction by footing its decision upon a lack of personal jurisdiction rather than subject matter jurisdiction.  A range of discretion to choose the basis for a dismissal for want of jurisdiction has long been recognized, and no court, until the panel opinion, had said otherwise.  See, e.g., Wilson v. Belin, 20 F.3d 644, 651 n.8 (5th Cir.), cert. denied, 513 U.S. 930 (1994); Villar v. Crowley Maritime Corp., 990 F.2d 1489, 1494 (5th Cir. 1993), cert. denied, 510 U.S. 1044 (1994); Asociacion Nacional de Pescadores v. Dow Quimica, 988 F.2d 559, 566-67 (5th Cir. 1993), cert. denied, 510 U.S. 1041 (1994); Jones v. Petty-Ray Geophysical Geosource, Inc., 954 F.2d 1061, 1066 (5th Cir.), cert. denied, 506 U.S. 867 (1992);

33

<u>Walker</u>, 335 F.2d 536.[25]  The practice has been so commonplace that only two other circuits have even had the occasion to address the issue, despite its regular appearance on the dockets of federal trial courts across the country.  <u>See, e.g.</u>, <u>Cantor Fitzgerald, L.P. v. Peaslee</u>, 88 F.3d 152, 155 (2d Cir. 1996); <u>Allen v. Ferguson</u>, 791 F.2d 611, 615 (7th Cir. 1986).[26]  Practices do not

_____

[25]The majority opinion misreads the facts of <u>Walker</u>.  The majority contends that <u>Walker</u> dealt only with the technical scope of the removal statute, for "[t]he defendant in <u>Walker</u> was unable to remove to federal court *not* because there was no federal subject-matter jurisdiction, but because 28 U.S.C. § 1441(b) prohibits removal by an in-state defendant in diversity cases." Majority op. at 18.  Yet there were two defendants in <u>Walker</u>.  The in-state defendant removed by invoking federal question jurisdiction, and the out-of-state defendant did so by citing diversity jurisdiction.  <u>See</u> <u>Walker</u>, 335 F.2d at 538 ("Asserting that a separable controversy was alleged against Savell, arising under the laws of the United States, and in view of the non-resident status of Associated Press, the suit was removed to United States District Court . . . .").  <u>Walker</u> makes no mention of the in-state defendant rule because that rule was irrelevant.

[26]Both <u>Cantor</u> and <u>Allen</u> agreed that district courts have discretion to dismiss for lack of personal jurisdiction in lieu of remanding for a lack of subject matter jurisdiction.  It is true, as the majority opinion notes, that <u>Cantor</u> cites to a case advocating the now-overruled "hypothetical jurisdiction" doctrine.  <u>See</u> <u>Cantor</u>, 88 F.3d at 155 (citing <u>Browning-Ferris Indus. v. Muszynski</u>, 899 F.2d 151 (2d Cir. 1990).  Yet <u>Cantor</u> did not premise its holding on the notion of "hypothetical jurisdiction," and the sensible comments the <u>Cantor</u> court made about personal jurisdiction were untouched by <u>Steel Co. v. Citizens for a Better Environment</u>, 118 S. Ct. 1003, 1012 (1998).  The majority's conclusion that <u>Cantor</u> conflicted with the earlier Second Circuit opinion in <u>Rhulen Agency, Inc., v. Alabama Ins. Guar. Ass'n</u>, 896 F.2d 674 (2d Cir. 1990), is in error.  <u>Cantor</u> expressly distinguished <u>Rhulen</u> on the basis that the personal jurisdictional defect in <u>Rhulen</u> was not easier to resolve than the defect in subject matter jurisdiction. The majority opinion makes no mention of the fact that <u>Cantor</u> treated and distinguished <u>Rhulen</u>.  Judge Newman was a member of both panels.  Our view of Second Circuit law is controlled by what that circuit says it is.
     Although the <u>Allen</u> court declined to embrace "the broader reading of <u>Walker</u>," <u>Allen</u>, 791 F.2d at 615, the <u>Allen</u> court at
(continued...)

34

become legitimate by virtue of their long standing. Yet for the simple truth that we stand on the shoulders of those before us, if for no other reason, we must be hesitant when we act on recent flashes of "new" insight to the fundamentals of governance.[27]

The majority reverses course and holds that district courts possess no discretion to decide issues of personal jurisdiction before those of subject matter jurisdiction. This contention inexplicably relies upon an obvious and settled, but irrelevant proposition: federal courts are without the authority to decide the merits of a case when they lack subject matter jurisdiction. See, e.g., B. Inc. v. Miller Brewing Co., 663 F.2d 545, 548 (Former 5th Cir. 1981). Relatedly, the argument continues, courts must raise the issue of subject matter jurisdiction *sua sponte*, see, e.g., Trizec Properties, Inc. v. United States Mineral Prods. Co., 974 F.2d 602 (5th Cir. 1992); and parties may not waive defects in subject matter jurisdiction, see, e.g., California v. LaRue, 409 U.S. 109, 112 n.3 (1972). The argument points to a recent decision

_____

(...continued)
least assumed that in certain circumstances a district court could dismiss for want of personal jurisdiction rather than remand for a defect in subject matter jurisdiction. Otherwise, it need never have conducted an analysis of the relative complexities of the alleged jurisdictional defects before it. See id. at 616.

[27]The majority opinion relies heavily on Ziegler v. Champion Mortgage Co., 913 F.2d 228 (5th Cir. 1990). Judge Gee in Ziegler was presented with a *merits judgment* rendered against two defendants, both of whom were from the same state as the plaintiff. The third defendant had long since been dismissed for a want of personal jurisdiction, a dismissal that was not before Judge Gee. The Ziegler panel thus did the obvious thing and vacated the judgment for a want of diversity jurisdiction. A suggestion that the situation facing Judge Gee is somehow analogous to the one before us is mistaken.

of the Supreme Court repudiating the practice of "'assuming' [subject matter jurisdiction] for the purpose of deciding the merits." Steel Co. v. Citizens for a Better Environment, 118 S. Ct. 1003, 1012 (1998). The Steel Co. Court stressed that "the requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception,'" id. (quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884)), and that "'[w]ithout jurisdiction the court cannot proceed at all in any cause,'" id. (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)). The plain lack of relevance in this contention teases us to look for more, for surely more there must be.

Ultimately the majority derives from this case law an ordering of jurisdictional concepts headed by subject matter jurisdiction, with the correlative that federal courts must always resolve challenges to subject matter jurisdiction before challenges to personal jurisdiction. The contention that subject matter jurisdiction exists above personal jurisdiction in some hierarchy of jurisdictional importance is untenable. It sees personal jurisdiction in a subordinate role, nigh a merit determination. This contention misunderstands jurisdiction. Justice Holmes put it succinctly: "The foundation of jurisdiction is physical power." McDonald v. Mabee, 243 U.S. 90, 91 (1917). Personal and subject matter jurisdiction do not differ in relevant ways. As we will explain, a federal district court is powerless to decide the merits of a case if it lacks either subject matter or personal jurisdiction. Both jurisdictional requirements are rooted in

36

constitutional commands of case or controversy and due process. And both are implemented by the Congress. As Justice O'Connor recognized in <u>Commodity Futures Trading Comm'n. v. Schor</u>, 478 U.S. 833 (1986), Article III protects both personal and structured interests.

It simply cannot be gainsaid that "[t]he validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter *and* the parties." <u>Insurance Corp. v. Compagnie des Bauxites</u>, 456 U.S. 694, 701 (1982) (emphasis added); <u>see also</u> <u>Stoll v. Gottlieb</u>, 305 U.S. 165, 171-72 (1938). As the Supreme Court noted in 1937, personal jurisdiction is as integral to the power of a federal court as is subject matter jurisdiction:

> Counsel for the petitioner assume that the presence of the defendant was not an element of the court's jurisdiction as a federal court; but the assumption is a mistaken one. By repeated decisions in this Court it has been adjudged that the presence of the defendant in a suit *in personam*, such as the one now under discussion, is an essential element of the jurisdiction of a district (formerly circuit) court as a federal court, and that in the absence of this element *the court is powerless to proceed to an adjudication*.

<u>Employers Reinsurance Corp. v. Bryant</u>, 299 U.S. 374, 382 (1937) (footnote omitted and emphasis added). Indeed, the requirement that federal courts possess personal jurisdiction over the parties is not derived from extralegal judicial concerns about fairness or equity; rather, it is rooted in the Due Process Clause of the Constitution. <u>See</u> <u>Compagnie des Bauxites</u>, 456 U.S. at 702.

Subject matter jurisdiction is best understood as a structural right, for "it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign." <u>Id.</u>

Personal jurisdiction, on the other hand, is an "individual liberty interest" which "represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." Id. This difference accounts for the fact that personal jurisdiction may be waived by the parties, whereas subject matter jurisdiction may not. Compare Commodity Futures Trading Comm'n, 478 U.S. at 850-51 (noting that structural rights may not be waived), with Compagnie des Bauxites, 456 U.S. at 703 (noting that individual rights may be waived).[28] From this principle follows naturally the rule that defects in subject matter jurisdiction must be raised by a court *sua sponte*, while deficiencies in personal jurisdiction need not. Where the parties do not challenge personal jurisdiction, their failure can be construed as a functional waiver, whereas parties cannot waive subject matter jurisdiction by their silence. The simple fact that personal jurisdiction is subject to waiver, however, does not somehow function to elevate subject matter jurisdiction in status. Both are critical to the power of a court; both are rooted in core constitutional precepts.

There is sequence to be sure. Questions of standing and subject matter jurisdiction are usually engaged at the outset of a case, and often that is the most efficient way of going. The majority's effort to support a mandated sequence, however, rests on

---

[28] Even this description of the difference between subject matter and personal jurisdiction is an overstatement. Personal jurisdiction can express territorial limits, akin to securing sovereign interests. The structured protections of subject matter jurisdiction are heavily influenced by consent. See Pennoyer v. Neff, 95 U.S. 714 (1877); Commodity Futures Trading Comm'n, 278 U.S. 833.

38

a flawed vision of the relationship between Article III and the power of the inferior courts. It is true that Article III limits disputes that Congress can assign to the federal courts, both in terms of case or controversy and in terms of disputes finally resolvable by courts. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992); Hayburn's Case, 2 U.S. (2 Dall.) 408 (1792). It is equally true that Article III grants to Congress the authority both to create inferior courts and to confer so much of the jurisdiction authorized by Article III that Congress chooses. The multi-purposed role of Article III with the hand of Congress at every turn belies the assertion that personal jurisdiction enjoys lesser regard than subject matter jurisdiction -- Due Process as opposed to Article III. Thus, when federal courts examine our subject matter jurisdiction, we are ordinarily construing the jurisdiction-authorizing statutes present in Title 28 of the U.S. Code, not Article III or any power flowing directly from it. Indeed, one of the attacks upon jurisdiction pointed to here as a defect in subject matter jurisdiction -- a lack of complete diversity -- is not itself a requirement of Article III, but rather suffers from want of a jurisdictional grant by Congress. In the literal sense then, personal jurisdiction rests more immediately upon a constitutional command than does a want of complete diversity. Contrary to the majority's suggestion, there is no subordinate role for personal jurisdiction in these fundamentals of our federalism.

Although the majority heavily relies upon the inapposite <u>Steel Co.</u> decision, it is in fact the majority that cannot square its opinion with recent Supreme Court jurisprudence. In <u>Caterpillar, Inc. v. Lewis</u>, 117 S. Ct. 467 (1996), a unanimous Court employed long-standing precedent to hold that a district court's judgment may stand in a removed case even if the court lacked subject matter jurisdiction at the time of removal, so long as the jurisdictional defect was cured by the time of judgment. In <u>Caterpillar</u>, upon removal there was a lack of complete diversity between the parties, but this defect was later cured by the district court's subsequent dismissal of a nondiverse defendant following a settlement between the parties. Indeed, the plaintiff in <u>Caterpillar</u> explicitly objected to jurisdiction shortly after removal, an objection that was erroneously overruled by the trial court. The majority opinion in this case travels against <u>Caterpillar</u>, for its absolutist approach to subject matter jurisdiction would suggest that every decision entered by the <u>Caterpillar</u> district court following the improper removal, from the dismissal of the nondiverse party to the entry of final judgment, was void. If the Supreme Court tolerates a capture of jurisdiction through the dismissal of a settling party by a court that lacked subject matter jurisdiction, surely it permits a district court to dismiss a case for want of personal jurisdiction, before considering a challenge to subject matter jurisdiction.

It is well settled that federal courts have jurisdiction to determine their own jurisdiction. <u>See, e.g.</u>, <u>Szabo Food Serv.,</u>

40

_Inc. v. Canteen Corp._, 823 F.2d 1073, 1078 (7th Cir. 1987). In the end, the majority concludes that this "jurisdiction to determine jurisdiction" does not encompass "jurisdiction to determine personal jurisdiction"; that a court without subject matter jurisdiction lacks the power to dismiss the case for lack of personal jurisdiction. As we have stated, there is no authority, either in the Constitution or the case law, to support this conclusion. Ironically, if the district court lacked the power to dismiss for want of personal jurisdiction because it lacked (had not decided) subject matter jurisdiction, the dismissal would have no binding effect on the state court. Yet binding effect is the premise of the majority's invoking of federalism.

B.

Much is made here of the fact that this case was removed from state court. Indeed, the majority opinion attempts to limit itself to removal situations.[29] It is presumed that removal is an affront to states' interests and federalism. This argument fails to grasp the centrality of removal in our complex of state and federal courts. Removal jurisdiction is an integral part of our federalism, having been present since the Judiciary Act of 1789. Sec. 14, The Judiciary Act of 1789 (1 Stat. 73). Indeed, in the

---

[29]Even assuming that there is, however, a hierarchy among jurisdictional issues grounded upon the structural limits ("Article III limits") of the federal courts' authority, as the majority opinion asserts, no principle justifies a distinction between cases removed to federal court and cases filed there originally. If the majority opinion's rule is true for removal, it is true for every form of federal jurisdiction.

famous and early debate about the scope of federal jurisdiction in Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304 (1816), both sides proceeded from the assumption that removal was a fundamental, and noncontroversial, aspect of our federalist judicial system. See id. at 348-51 (Story, J.); id. at 378 (Johnson, J., concurring).

In 28 U.S.C. §§ 1331 & 1332, Congress allocated the concurrent jurisdiction of the federal and state courts. Congress has periodically expanded the scope of removal jurisdiction where it was believed necessary to afford federal defendants or interests a federal forum or otherwise to promote uniformity in federal law. See, e.g., 28 U.S.C. § 1443 (civil rights removal statute). Under this system, the statutory scheme is tilted toward adjudication of removable cases in federal court,[30] for state proceedings may not go forward unless both parties agree to forsake federal jurisdiction. Under 28 U.S.C. § 1441, defendants (unless they are local defendants) have the unilateral right to remove cases from the state courts. Similarly, if a plaintiff files a removable case in federal court, there is no corresponding statutory provision permitting the defendant to remand the case to state court. Accordingly, contrary to the position taken by the majority opinion, there is no substantive distinction between cases removed and those originally filed in federal court; both reflect a party's

---

[30]Of course, we are to construe the removal statute narrowly. See Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988). Yet when removal applies, it places the state/federal forum decision in the defendant's hands.

42

choice not to proceed in state court. Neither situation represents a constitutional misallocation of power to federal courts at the expense of state courts.

Absent bad-faith removal, a federal court's decision to address a defect in personal jurisdiction before one in subject matter jurisdiction therefore does not somehow frustrate the plaintiff's choice of forum, for Congress explicitly limits the presumptive status of concurrent jurisdiction by defining a defendant's right of removal. Its federal defenses aside, a defendant has a right equal to the plaintiff to invoke the jurisdiction of the federal court for decision of the plaintiff's claims. Thus, so long as federal subject matter jurisdiction is nonfrivolously invoked, federalism offers no reason to distinguish between first engaging personal or subject matter jurisdiction. The removal statute itself contemplates removal before any state court adjudication of personal jurisdiction. Cf. 28 U.S.C. § 1448 (permitting first service of process after removal); 14A Wright & Miller § 3721, at 228-29 ("A defendant . . . may move to dismiss for lack of personal jurisdiction after removal.") (notice of removal must be filed within thirty days of receipt of initial pleading). Courts frustrate no federalism principles when they address the constitutional issues of personal jurisdiction before addressing subject matter jurisdiction in a removed case.

C.

Of course, even though subject matter and personal jurisdiction are of equal importance to a federal court, challenges to one must inevitably be decided before challenges to the other. That said, the choice of a district court, its exercise of discretion, should be guided by familiar considerations. Here concerns such as efficiency and avoiding abuse of rights of removal become relevant -- and indeed on the proper facts, so does federalism.

State and federal courts are equally competent to decide issues of personal jurisdiction, where those issues turn on federal constitutional law. See Stone v. Powell, 428 U.S. 465, 493 n.35 (1976). In a diversity case, when a federal district court grants a motion to dismiss for want of personal jurisdiction over a non-resident of the forum state, the ruling precludes the state court from deciding again the personal jurisdictional issue. See Baldwin v. Iowa State Traveling Men's Assoc., 283 U.S. 522, 524-27 (1931) (concluding that federal court determinations as to personal jurisdiction are *res judicata* in subsequent litigation in state court). Simultaneously, it leaves subject matter jurisdiction for a second federal forum that has personal jurisdiction over the parties. Yet although this reality of the rules of preclusion is important, it is not determinative of whether a district court may move directly to the issue of personal jurisdiction.

In our view a district court should ordinarily first satisfy itself of its subject matter jurisdiction. Nonetheless, we would continue to hold that there are limited circumstances under which

44

it may be more appropriate for the federal court to decide the issue of personal jurisdiction first. The case before us today is a good example.

When a challenge to personal jurisdiction is relatively straightforward and does not involve complex state-law questions, but the alleged defect in subject matter jurisdiction raises difficult issues of law, a district court's concerns for federalism may give way to its self-restraint. In general, district courts must avoid ruling on difficult, complex, or novel matters, if an easier and equally appropriate ground for decision is available to them. See Allen, 791 F.2d at 615 ("Of course, in keeping with the notions of judicial restraint, federal courts should not reach out to resolve complex and controversial questions when a decision may be based on a narrower ground."). At the same time, resolving a simple matter of personal jurisdiction, premised on federal constitutional law, intrudes little upon the domain of state courts. If a federal court should determine that an issue of personal jurisdiction is resolved easily in favor of a defendant, little is accomplished, and much is wasted, by a remand to state court to permit that tribunal to come to the same conclusion.

True, such a course of action "precludes" the state court from deciding the issue of personal jurisdiction. Yet it is inevitable in our dualistic but hierarchical system of federal and state courts that the state courts will occasionally, for efficiency's sake, be deprived of the opportunity to pass on certain matters otherwise available to them; indeed, the very concept of

45

supplemental jurisdiction is premised on this notion.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("[Supplemental jurisdiction's] justification lies in considerations of judicial economy, convenience, and fairness to litigants . . . .").[31]  Where, as here, the issue precluded from decision is a relatively simple question of federal law, blind invocations of "federalism" should give way to more sensible uses of judicial discretion.  Of course, efficiency concerns cannot offer a justification for a federal court to reach the *merits* of a dispute in the absence of federal jurisdiction, personal or subject matter.  There must be jurisdiction to decide the merits.  That is what jurisdiction is.  See Oliver v. Trunkline Gas Co., 789 F.2d 341, 343 (5th Cir. 1986) (a position reaffirmed by the Supreme Court a decade later).  But given that there exists no "jurisdictional hierarchy," efficiency concerns can instruct the decision to dismiss for a defect in one jurisdictional basis as opposed to another.

Apart from the comparative simplicity of the challenges to a case's jurisdictional bases, other factors should inform a district court's decision to determine the order in which jurisdictional defects are addressed.  The majority suggests that defendants might manufacture claims to subject matter jurisdiction in order to obtain a federal forum to hear their attacks on personal

―――――――――――――――

[31]The contours of the discretion that we would reaffirm mirror closely the contours of district courts' discretion to exercise their supplemental jurisdiction.  See 28 U.S.C. § 1367(c) (directing district courts to avoid supplemental claims that predominate over federal claims or raise novel or complex issues of state law).

jurisdiction. Yet as the cases dismissed by the majority have recognized, district courts should opt to address challenges to personal jurisdiction only when removal is not frivolous and is made in apparent good faith. See Pescadores, 988 F.2d at 566-67. On the other hand, oftentimes the question of subject matter jurisdiction turns in part upon the presence of personal jurisdiction. In such situations, it is even more appropriate to resolve the objections to personal jurisdiction first. See Villar, 990 F.2d at 1494-95.

D.

We would reaffirm today that district courts possess discretion to address challenges to personal jurisdiction before it addresses subject matter jurisdiction. Courts typically should first confirm their subject matter jurisdiction. However, we believe that they may opt instead to resolve defects in personal jurisdiction when the attack on personal jurisdiction presents a question of federal law that is far more easily resolved than a challenge to subject matter jurisdiction, when the defendant's removal is not frivolous and is made in apparent good faith, and when the challenge to personal jurisdiction does not raise significant issues of state law or the attack on subject matter jurisdiction does. Furthermore, in those situations in which the question of subject matter jurisdiction turns in part upon the presence of personal jurisdiction, it would again be appropriate to resolve the objections to personal jurisdiction first.

47

Recognizing that district courts possess a level of discretion is enormously preferable to the majority's alternative, a mechanical and rigid ordering of decisionmaking. We cannot see around corners, nor can we predict the infinite variety of cases that may one day come before our district courts. Rules that lack flexibility are often vices in and of themselves when dealing with trial courts. Given that we are not constitutionally compelled to craft a rigid standard for determining the order in which jurisdictional defects are addressed, we should eschew the invitation to invent one through appellate rulemaking. The very nature of the work of a federal trial judge here makes discretion a value in itself. Relatedly, we must not forget that sequencing, when required, has been by rulemaking, a cooperative enterprise of Congress and of the courts. Indeed, the courts acting alone crafted a set of rules for the exercise of pendent jurisdiction, only to conclude that the enterprise was the task for Congress. See Finley v. United States, 490 U.S. 545 (1989).

III.

Thus, we would hold that district courts possess discretion to consider motions challenging personal jurisdiction before those challenging subject matter jurisdiction. The sensible way in which this discretion had operated in our circuit until the panel opinion below is illustrated by the district court's handling of this case.

On the one hand, the plaintiffs' attack on subject matter jurisdiction before the district court raised an issue of first

48

impression in this circuit. Although they challenged subject matter jurisdiction on multiple grounds, the plaintiffs' most troubling arguments were leveled against 9 U.S.C. § 205, which permits removal in cases "relating to" international arbitral agreements. According to the plaintiffs, their case in no way "related to" such an agreement because they were not seeking to enforce the underlying Heimdal Agreement between MPN and Ruhrgas. Ruhrgas, on the other hand, contended that the phrase "related to" pulls more cases into a federal court's removal jurisdiction than just those seeking to enforce the arbitral agreement itself. Disregarding Ruhrgas's other bases for removal, Ruhrgas's invocation of § 205 was certainly not frivolous. Furthermore, considering the mountain of amicus filings before our court criticizing the panel's interpretation of § 205, the plaintiffs' opposition to federal subject matter jurisdiction was a difficult one to address, implicating novel questions of law in this circuit. Finally, the presence of subject matter jurisdiction, at least as it related to diversity, turned in part on the question of the fraudulent joinder of Norge, a foreign corporation, as a plaintiff suing Ruhrgas, another foreign corporation. See Corporacion Venezolana de Fomento v. Vintero Sales Corp., 629 F.2d 786, 790 (2d Cir. 1980) (noting that the presence of aliens on both sides of the case defeats diversity jurisdiction), cert. denied, 449 U.S. 1080 (1981). This issue overlapped with the question of personal

49

jurisdiction.[32]    In the end, the issues of subject matter jurisdiction are so complex that the majority opinion declines to address them, despite the full treatment given to them by the panel below.  See Marathon Oil, 115 F.3d at 318 (describing the subject matter jurisdiction issue as "formidable").[33]

On the other hand, Ruhrgas's challenge to the court's personal jurisdiction was relatively straightforward.  Ruhrgas contended that it lacked the requisite minimum contacts with Texas to support jurisdiction from a Texas court.  Ruhrgas's motion required the district court only to consider the reach of the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, which is governed by the federal Constitution's Due Process Clause.  See Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 200 (Tex. 1985).  No substantial questions of purely state law were presented. Accordingly, the federal district court was at least as competent as any state court to decide the personal jurisdictional issue.  In addition, as demonstrated below, the merits of Ruhrgas's challenge to personal jurisdiction could be resolved relatively easily in its favor.

Thus, the district court, in taking up personal jurisdiction, did not abuse what heretofore had been its discretion.  Indeed, the

---

[32]Norge would have to establish personal jurisdiction over Ruhrgas based on Ruhrgas's contacts with Texas that were pertinent to damaging the value of Norge's licence to produce Norwegian oil.

[33]Norge also asserted subject matter jurisdiction based on a federal law of international relations, insofar as Marathon's complaint implicated the actions of sovereign-owned Statoil, the Norwegian gas company.

50

majority does not suggest that it did.  Although it parted from standard practice in not first resolving the attack on subject matter jurisdiction, the factors we have outlined above all supported the court's exercise of its discretion.

## IV.

In the end, the majority's opinion is nothing more than an exercise in unauthorized judicial rulemaking.  In the pursuit of a vindication of its view of federalism principles, the majority withdraws discretion from district courts and replaces it with a rigid sequencing of decisions, despite the absence of any constitutional, statutory, or jurisprudential compulsion to do so.  In doing so, the majority ignores the Congress and pays little attention to the host of legal doctrines, from the Due-Process basis of personal jurisdiction to the <u>Caterpillar</u> rule to the concept of supplemental jurisdiction, that contradict its new rule of procedure.  The Federal Rules of Civil Procedure address the issue of the order in which the defenses of lack of subject matter and lack of personal jurisdiction will be raised.  Rules 12 (b)(1) and (2) include both as preliminary defenses.  The Rules of Civil Procedure regulate in various ways the order of conducting proceedings, including various pre-trial disputes over discovery, summary judgment, and trial itself.  The majority does nothing more than pronounce an addendum to Rule 12(b).  This undertaking will rightfully be criticized as an imperial view of judicial roles and a confusion of life tenure with insight.  We respectfully dissent.